THE GEORGIA RAILROAD *vs.* WILLIAMS.

74 723
93 394
74 723
103 350
105 102
74 723
f110 171
74 723
f127 475

1. Where a person injured by a railroad train was walking on the track without the permission of the company, and had passed beyond the crossing of a public road about two hundred yards, when he was injured by a train coming up behind him, a non-compliance on the part of the company with the law in regard to the duty of railroad companies in respect to the erection of blow-posts and the blowing and continuing to blow the whistle, and the checking and continuing to check the speed in running, so as to keep the train under control at a public crossing, may go to the jury as a circumstance showing negligence.

(*a.*) This case differs from that of *Holmes, administratrix, vs. Central Railroad, 37 Ga.,* 593.

2. A plea which admitted that the plaintiff was injured by the train of the defendant, but denied that it was guilty of negligence, and asserted that it used all ordinary care and reasonable diligence, and that the negligence of the plaintiff caused the injury, was not a plea of justification which entitled the defendant to open and conclude the argument.

3. Rules of a railroad company, requiring that an employé should be stationed at the end of the car in front, or should move abreast of it when the train was running backwards, where he could be seen by the engineer and could signal him in case of any obstruction on the track, were admissible in evidence, as showing that the com-

pany regarded the moving of the trains backwards as more danger-
ous and requiring more care than running in the usual manner,
although such rules were not public rules, but only intended for the
guidance of the agents and officers of the company.

4. The requests of the plaintiff in error to charge were substantially
given in the charge, except in so far as they conflicted with the
principles stated above, and so far they were properly refused.

5. The evidence is sufficient to support the verdict in the finding for
the plaintiff, and the damages are not excessive; and being ap-
proved by the presiding judge, it must stand.

HALL, J., dissented.

March 30, 1885.

Railroads. Damages. Negligence. Evidence. Roads
and Bridges. Before Judge POTTLE. Warren Superior
Court. October Adjourned Term, 1884.

Williams brought suit against the Georgia Railroad for
a personal injury, resulting from being run over by a train,
laying his damages at $20,000.00. Defendant pleaded the
general issue and a special plea, which was as follows:

"And now comes the defendant, by its attorneys, and says that it
is true, as stated in plaintiff's declaration, that plaintiff was injured at
the time and place stated in his declaration by the running of defend-
ant's locomotive and train; and that, by reason of said injury, as afore-
said, the presumption of negligence is upon defendant.

"Defendant, taking the *onus* thus imposed upon it, says:

"That, at the time and place aforesaid, defendant was in the dis-
charge of its business as the owner and operator of a railroad, on its
own road and right of way. That its said train, in all its appliances
and appointments, was in proper order.

"That the same was operated by careful, experienced and skillful
agents.

"That while it was so operated, with all ordinary care and reason-
able diligence, plaintiff intruded upon defendant's track.

"That though, under the circumstances, defendant owed no duty,
except the negative duty not wilfully or wantonly or recklessly to
injure him, nevertheless defendant used, through its servants and
agents, all ordinary care and reasonable diligence towards him; but,
notwithstanding such care and diligence and by reason of the negli-
gence of plaintiff, plaintiff was injured, as set forth in his declara-
tion.

"And defendant says that defendant is not liable to plaintiff,

but it is justified; and of this defendant puts itself upon the country and prays the judgment of the court."

On the trial, the evidence in favor of the plaintiff showed, in brief, as follows: He started from Barnett Station to his home, a short distance away, walking on the cross-ties of the Georgia Railroad track. The Washington branch road diverges gradually at this point, and the train was going out, running only a few feet from him. When a short distance beyond the public road crossing (about a 150 to 200 yards) a construction or gravel train came up the defendant's track behind plaintiff. This train consisted of fourteen cars—two " shanty cars " and twelve flat cars. It was running backwards at a very rapid speed, variously estimated at from twelve to thirty miles. The rules of the company required, when a train was running backwards, that a man should be posted at or abreast of the front end of the foremost car, for precautionary purposes, and where he could be seen, and could signal the engineer. In the present case, there was a man on the foremost car. He took his position a little distance from the end, on the ground that he was afraid of falling off if he stood at the end. No signal was given by blowing the whistle or ringing the bell in approaching the crossing, nor was the speed of the train slackened. The train-hand on the top of the car saw the plaintiff as the train was approaching him, but gave no signal. At the time of the accident, he had looked away, and was gazing at the train on the Washingtion branch, which was running on a track almost beside this train, and on which this gravel train was rapidly gaining. Plaintiff had worked for defendant in 1866, and was familiar with the rules governing the running of trains. He knew nothing of the approach of the train until he was struck by it. When this happened, a boy on the platform of the front car called out that they had killed a man, and the hand on top thereupon signalled the engineer. The speed was slackened a little, but the train did not stop, but went on, and was soon out of sight.

Plaintiff was picked up in an insensible condition and carried home; both legs were crushed, and one had to be amputated; besides, there were injuries to his back and shoulder, causing great pain and suffering. Loss of time, value of services ($1.25 per day), and expectancy of life were shown (his age being fifty-two).

The evidence on behalf of the defendant conflicted with this in the following particulars : The construction train had been standing on a side track for thirty-five minutes. When the train started for Washington, this gravel train went down the road towards Augusta, until it passed the switch, and then backed up the main track. The train-hand on top of the car saw plaintiff walking on the cross-ties beside the track, but supposed he would get off of the track. When near plaintiff, he was hidden from the sight of the train-hand by the end of the car. The signal was given for starting back, and the whistle was sounded three times at the blow-post on that side of the crossing, but was not blown continuously, nor was the speed slackened. The speed was only six to eight miles an hour. When about the length of two cars from plaintiff, the young hand on the bottom platform of the car testified that he hallooed to plaintiff; that the latter looked around, but did not get off, and that he threw a chip at plaintiff without effect. After the injury, the train was brought to a stop  In a distance of about three hundred yards, such a train could not have acquired a speed of more than twelve or fourteen miles an hour.

The jury found for the plaintiff $6,040.00. Defendant moved for a new trial, on the following grounds:

(1) to (4.) Because the verdict was contrary to law, evidence and the charge of the court.

(5.) Because the court refused to allow defendant to open and conclude the argument of the case, under the plea filed by defendant admitting the injury and justifying the same.

(6.) Because the court admitted in evidence the following rule found in the " Rules and Regulations of the Geor-

gia Railroad, Edition No. 3, to take effect January 1st, 1883. This book supersedes all of prior date. It is the property of the company and for the use of employés only," to-wit: " When backing or pushing cars, one man must always be stationed on top of the front end of the leading car, or must walk or run by side of track abreast of leading car, where he can be seen by engineer, or signal to him in case of any obstruction on track;"—the objection being that said rule was for the protection of the railroad company, its agents, employés and persons on its trains, and not for the benefit of the public, and especially men walking on the track of the railroad, like this plaintiff was shown to be at the time of the accident to him.

(7.) Because the court refused to charge the following requests of defendant: " It is made the duty of railroad companies to erect blow-posts four hundred yards from public crossings, and to blow the whistle of the engine at such blow-posts, and to commence checking the speed of the train, and to continue to blow and to check until the the crossing is reached. This is a provision of law meant to secure safety for persons lawfully using the crossings. The railroad company being allowed to pass over a public road, the law says it must do so in such a way as not to impair the use and value to the public of what the public previously used freely. Any one put under the protection of the provision of the law, who is injured by the failure of the company to perform its duty in this respect, is presumptively entitled to damages. But this presumption of law was not meant to secure safety for persons walking on and along the track, instead of using the public road, or to secure to such persons so walking any better right to walk on or along the track, at or near a crossing, than elsewhere on the track, and such persons cannot invoke these provisions of law for their protection."

" The liability of defendant to plaintiff depends upon these questions : Did defendant owe any legal duty to plaintiff? If so, what was that duty ? Has defendant failed in

the performance of that duty to plaintiff? Was that failure the proximate cause of plaintiff's injury? Or was plaintiff's injury caused by his own negligence? And could plaintiff, even if defendant failed in its duty to him, have avoided the consequences of defendant's failure?"

" The duty owed by a railroad company to one walking on the track for his own convenience is the negative duty of not wantonly or wilfully injuring him, or not injuring him with such gross negligence as shows careless, reckless disregard of the lives of others   The company's servants may ordinarily presume that a person of full age and capacity, who is walking on the track at some distance ahead of the train, will leave the track in time to save himself from harm, and the presumption may be relied on until impossible to stop the train to prevent an accident."

" In this case, if Williams, the plaintiff, was walking on the track, apparently in a sound state of mind, then the company's servants had a right to presume that he would leave the track, before the train reached him, and to run the train on this presumption. If, when it appeared to the company's servants that this presumption was wrong, it was too late to stop the train, then the plaintiff cannot complain of the wrong conduct of defendant in this particular, and has not the right to hold it liable for such presumption."

(8.) Because the court charged the following requests of plaintiff: " The law requires railroad companies to establish blow-posts, and to blow the whistle four hundred yards before reaching a public crossing, and to continue to blow, to check the speed of the train, and to continue to check, so that they may stop if any person or thing should be crossing the track, and is intended to apply directly to the protection of such crossing; but if you believe from the testimony this company failed to comply with this law, and that such failure contributed to the injury done plaintiff, you may consider this, in connection with all the other facts and circumstances of the case, in determining whether

or not the injury to plaintiff was caused by the negligence of the agents of the company."

" Where a statute imposes a duty on a railroad company in relation to the running of its trains, if it violates that duty, and an injury results from such violation, then the company would be liable for damages caused thereby."

" If you decide from the evidence before you that the plaintiff is entitled to recover in this case, you have a right to consider, in fixing the amount of damages you award him, not only the physical injuries of the plaintiff, but his mental and physical suffering are proper elements of damage, if the evidence shows that he so suffered."

(9.) Because the court charged as follows : " I read you again section 708 of the Code. In considering what duties are imposed by the law on railroad companies and individuals, you may look to see how this failure, if any at all, contributed to the injury. The law requiring the blowing at blow-posts and before reaching crossings was intended to protect travelers or persons at crossings, but still the public, when not at crossings, are presumed to know the requirements of the law and may control their conduct by what the law has required of its engineers;" and because the court charged as follows: " By the law which I have read you, engineers are required to blow their whistles at blow-posts, and to continue to blow and to check, and to continue to check, the speed of the engine so as to stop in time, should any person or thing be crossing the track. It is not claimed in this case that the plaintiff was at the crossing at the time of the hurt. If you believe that this was not done by the engineer, and the accident happened in consequence of his failure to comply, then the plaintiff is entitled to recover; but, although this was not done by the engineer, yet if that failure did not cause the injury, the fact that the law was not complied with does not make the defendant liable."

(10.) Because such verdict is excessive.

The motion was overruled, and defendant excepted.

Jos. B. Cumming; W. M. & W. P. Reese, for plaintiff in error.

Jas. Whitehead; J. H. Lumpkin; J. W. Hixon, for defendant.

Jackson, Chief Justice.

The main question presented for our adjudication by the plaintiff in error in this case is, whether non-compliance with the law in regard to the duty of railroad companies, in respect to the erection of blowing-posts, the blowing and continuing to blow whistles, and the checking and continuing to check speed in running, so as to keep the train under control at public crossings, may go to the jury as a circumstance showing negligence, where the person injured was hurt, some two hundred yards beyond the crossing, on the track, without permission of the company to be there?

The question is answered in respect to cattle and horses by adjudications of this court. In 64th *Ga.*, 649, this court held that the owner of a cow could recover her value, where she was killed between the blow-post and the crossing, if the failure to blow and continue blowing, and to check and continue checking, operated as a cause of the killing. Judge Crawford, delivering the opinion of the court, says: "The law governing the running of trains is co-extensive with its lines, and if there be higher degrees of diligence, greater caution, unusual alarm signals and less speed required at some points than at others, and the testimony shows that the damage complained of was within the limits of points thus protected, it would be error in the judge not to give the whole law in charge to the jury."

This decision was rendered in a case where the cow was killed two hundred yards from the crossing, between it and that blow-post which the train had passed without complying with the statute laid down in the Code, sections 708 *et seq.*; and that careful judge, who wrote the decision,

was commenting on the exception to a charge that "the statute makes it the duty of those in charge of a railroad train approaching a public road crossing, when the train arrives within four hundred yards thereof, to check the speed of the train, and to continue to check the same, that it may be stopped in time, should any person or thing be crossing the track of the railroad at such public crossing. . . . Where a statute imposes a duty on a railroad company in relation to the running of the trains, if it violates that duty and an injury results from such violation, then the company would be liable for the damages caused thereby." And then the charge cautions the jury that "the failure to comply with the law must operate as a cause of the injury." Now, it is in a comment on this charge, and in case of a cow killed two hundred yards from the crossing, that the court said, through Judge Crawford, that "the testimony showed that the damage complained of was within the limits of points thus protected," and that "it would be error not to give the whole law in charge to the jury," referring to this blow-post law. The cow was midway between crossing and blow-post, and that spot was within the protected points. It appears that in the mind of the court any spot between the blow-posts and the crossing was within those protected points.

But it is argued that this damage occurred between the blow-post which the train passed before reaching the crossing, and where it was required to blow, and not at a spot beyond the crossing from that blow-post, and that the rule does not apply to a spot beyond the crossing from that blow-post.

In 65 Ga., 631, in the case of the killing of a horse, the same rule was applied to the damage when done beyond the crossing from the blow-post which the train had passed The same cautious and conservative judge again delivered the opinion of the court, and used stronger language than before. In that case, he was commenting on an exception to this charge: "The law requires railroad companies to

establish blow-posts, and to blow the whistle four hundred yards before reaching a public crossing, and to continue to blow, to check the speed of the train, and to continue to check, so that they may stop if any person or thing should be crossing the track, and is intended to apply directly to the protection of such crossing. But if you believe that this company failed to comply with this law, and that such failure contributed to the killing of the plaintiff's horse, you may consider this in connection with all the other facts and circumstances of the case in determining whether or not the killing was caused by the negligence of the agents of the company."

In respect to the above charge the court say: "Looking at this charge in the light of the evidence and the law governing such cases, we cannot hold that it was error. Trains are to be run in obedience to law, and if they should be run at any time or place in violation of a positive penal statute of the state, such act is not only one of negligence, but of crime, and any injury to others resulting therefrom must be responded to in damages. Signal posts and the sounding of the alarm whistle, it is true, are intended to protect life and property at public crossings, but more than this is required. The employés of the roads must have their trains sufficiently in hand to warrant absolute protection at those points, and a failure to do this is negligence. So that in this case, had the engineer and the men under him obeyed the law, then the speed of the train could have been checked in time to have prevented injury on the crossing itself; but having disobeyed it, he was unable to check it in time to prevent the injury which occurred a short distance beyond. The absence of the signal post, the failure to give the usual warning upon approaching the crossing, as well as the neglect of having his train under control at a point where the law declares it his duty to do so, may well be considered by the jury in determining upon the question of negligence in killing the horse just at the place where he was killed."

The original record shows that this horse was killed something over two hundred yards from the crossing beyond the blow-post passed by the train, and though he may have run some of the distance, yet it could not have been from the crossing or very near it. The language, "a short distance from the crossing," was doubtless used comparatively by the court. It was between these points that the judge had, in the case in the 64th, *supra*, regarded as the limits of protection under the blowing-post laws.

So that the only question that can be raised, under these decisions, is this, does that law which protects the life of cattle and horses, or injury to them, also protect men within the same limits? Why not? True, as argued, mankind have more intelligence; yet human life is more valuable and precious in the eye of the law everywhere. The statute itself embraces men. Its language is, "person or thing." True, it uses this language in speaking about a person or thing crossing the track; but it gives each the same protection of the blow-post laws. Code, §708 *et seq*. And this court repeats its language in respect to persons as well as things in the cases cited, although dealing then only with things, the cow and the horse. If both are protected at the crossing, it is not easy to see why both are not within the protected points, within which this court has held that it protected things.

To apply the law to this case: Had the whistle been continuously blown, and the speed of this train been continuously checked, up to the crossing, this man in all probability would not have been hurt. He would have, in all human probability, heard the continuous blowing within one or two hundred yards of him at the crossing, when he could not hear a blast at a post five or six hundred yards from him. It is admitted that at the crossing, or nearer to it than the blow-post, there was no blowing at all, and none anywhere, but the blast or two at the four hundred yard blow-post.

Had the train been kept in check up to the crossing, so

as to be stopped, if necessary, it would have hardly acquired speed enough to have hurt the man, or before it had time to acquire it, it would have been under control and might have been stopped before it struck him ˙ It is clear, there- fore, that the jury had evidence enough to show that this criminal negligence contributed to the damage, if indeed it was not the only cause of it.

In *Holmes, administratrix, vs. The Central Railroad and Banking Company*, 37 *Ga.*, 593, this point was only incidentally in the case. The court below did not certify to the exception to the charge involving the point, but this court affirmed the grant of a new trial, on the ground that the facts, taken all together as they appear in the record, show the exercise of all ordinary and reasonable care and diligence on the part of the agents of the railroad company on that occasion. What is said about confining the in- jury to the crossing alone as recoverable damage, is merely the reasoning of the judge delivering the opinion, giving that fact as a circumstance, together with the darkness of the night, and other circumstances, to show the occasion upon which the question of diligence in the company was to be determined. For the judge also says that the fact that the place where the negro was killed was a part of the road where persons were in the habit of walking, as in the case at bar, might be considered in measuring that dil- igence.*

2. There was no error in denying the company the right to open and conclude the case on the plea of justification.

3. There is none in admitting the rules of the company to go in evidence, though not public˙rules, but intended for the guidance of its officers and agents only as to what should be done when the train was running backwards.

It showed that the company regarded that mode of mov- ing the train more dangerous and requiring more care, and was admissible for that purpose, if no other.

---

*As to the right of persons near a crossing to rely on the law of signals at cross- ings, see also *Geo. R. R. vs. Carr*, 73 *Ga.*, 557.

4. The requests of plaintiff in error were substantially given in the charge, except wherein they conflict with this opinion above, and wherein they do conflict they ought not to have been given.

5. The evidence is sufficient to support the verdict, both in the finding for the defendant in error and in the amount of the damages as not excessive, and being approved by the presiding judge, it must stand.

Judgment affirmed.

BLANDFORD, Justice, concurred, but furnished no written opinion

HALL, Justice, dissenting.

I am unable to concur with the majority of the court as to the application of the negligence implied from a failure to sound the whistle and check the speed of a train, so as to have it well in hand when approaching the crossing of a public highway over the railroad track, to an intruder on the track, who, at the point of collision, was over two hundred yards beyond the crossing. I think the case of *Holmes vs. The Central Railroad*, 37 *Ga.*, 593, which was a decision rendered by a full bench, is directly opposed to their view, and that that decision is not at all shaken or in the least modified by the decisions relied on to uphold this finding in the 64 *Ga.*, 649, and 65 *Id.*, 631. In the first of these cases, a cow was upon the track between the signal post and the crossing, and in the last, a horse was on it some twenty-five yards beyond the crossing when first seen; in both cases, there was a failure to observe the requirements of the statute as to sounding the whistle and checking the speed of the train, and the company was properly chargeable with the negligence of its agents, as it would have been had the cow or horse been elsewhere on the track, and no effort had been made to frighten them from it, or to check the speed of the train, if they had been seen in time to prevent the collision by resorting to such

precautions. The company would not have been in the exercise of "all ordinary care and diligence" under such circumstances. If it would keep stock running at large off its right-of-way, it should enclose it, or in the absence of such enclosure, it should use every reasonable precaution to drive them from the track, for under such circumstances their presence on it is not unlawful, nor is their owner subject to penalties for allowing them to be there; whereas, a person who, contrary to the will of the company, intrudes upon its track is guilty of a misdemeanor and is liable to indictment and punishment therefor. Code, §4437. The company is bound to greater care in the case of irrational animals, incapable of appreciating danger, and of providing against its consequences, than in the case of intelligent human beings, whose reason instructs them as to the perils of any particular situation, and who, by the exercise of their senses, can avoid the calamities which may arise therefrom. In the case of a cow or a horse found walking along the track of a railway, there is no presumption that it will leave it in time to escape injury, but just the opposite presumption obtains in the case of a man; and it has been held that whatever the company has a right to presume, they have a right to act on, and to continue to act on it, until they discover that the person is not likely to escape the peril, when they are bound to exert themselves to avoid the calamity. *Sims vs. Macon & W. Railroad*, 28 *Ga.*, 93 *et seq.* The plaintiff in this case had been an employé of the company; he lived in the vicinity and was familiar with the situation; he seems to have acted with utter indifference, if not with culpable neglect, in failing to make use of his faculties to avoid any danger to which he was exposed; he was walking on the end of the cross-ties next to the track, and nothing appears to have put the employés of the company upon notice that he would not or could not step aside and thus avoid the injury. It seems to me that, by the exercise of the slightest care, he could have avoided the seri-

ous consequences to himself.   It is quite apparent to my mind that he was at fault in using this track as a pathway, and was utterly negligent while so using it in failing to look out for danger and in making preparations to avoid it.   For these reasons, and for others given more at length in my opinions in the cases of the *Central Railroad vs. Brinson*, 70  *Ga.*, 207, and in *The Savannah, F. & W. Railway vs. Stewart,* 71  *Id.*, 427, I am unwilling to hold out inducements to persons to trespass upon the rights of others, in the preservation of which rights the public are largely interested, by rewarding them with heavy damages against the party wronged by the trespass, especially where their own indifference to consequences, if not their utter want of care, is apparent, and it is at least capitally doubtful whether the opposing party was at fault.   I think there was nothing to base the heavy finding in this case upon, and that upon every principle of law, as I understand it, the plaintiff had no right to his suit, and that there should be a reversal of the judgment refusing a new trial.