CHICAGO, R. I. & G. RY. CO. v. GOODRICH.

(Court of Civil Appeals of Texas. March 30, 1911.)

1. APPEAL AND ERROR (§ 1060*)—HARMLESS ERROR—IMPROPER ARGUMENT.

In an action for injuries to a switchman for which a verdict for $10,000 was recovered, plaintiff's counsel stated in his closing argument, referring to plaintiff: "Now, how does he face the future? His only capital was his ability to work, to labor; that was his capital" —but denied, when the remark was objected to, he referred to plaintiff's financial condition, and the objection was overruled. Afterwards plaintiff's counsel asked what the cure for plaintiff's condition was and how would "the poor fellow rest at one of these resorts or go to a different part of the country, if he hasn't any money to go on or anything to pay his board"; but the court instructed the jury not to consider the latter remark. To show that plaintiff had neurasthenia, which might be caused by worry, evidence was admitted that plaintiff and his wife were living apart. Referring to such evidence, plaintiff's counsel stated in his closing argument that defendant had wronged plaintiff by showing his domestic troubles, and that such evidence could only have been offered to show plaintiff's unhappy domestic affairs and to prejudice him before the jury. Defendant objected when the court merely stated that the evidence referred to was admitted to show the cause of plaintiff's nervous condition. Counsel also interrogated whether $15,000 or $20,000 was too much, and stated that a $10.000 verdict would be as little as the jury could award plaintiff, whereupon the court stated such remark should not be considered. The verdict was large, and the testimony as to negligence was conflicting and a verdict for defendant would have been sustained. Held, that the argument first quoted referred to plaintiff's financial condition, and, taken in connection with the other improper remarks, was reversible error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4135; Dec. Dig. § 1060.*]

2. TRIAL (§ 120*)—ARGUMENT BY COUNSEL.

Counsel should not take advantage of their privilege in making argument to put before the jury facts not admissible in evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 285–287; Dec. Dig. § 120.*]

Appeal from District Court, Tarrant County; Jas. W. Swayne, Judge.

Action by J. M. Goodrich against the Chicago, Rock Island & Gulf Railway Company. From a judgment for plaintiff, defendant appeals. Reversed.

N. H. Lassiter, Robert Harrison, and H. M. Chapman, for appellant. McLean & Carlock, for appellee.

HODGES, J. The judgment from which this appeal is prosecuted was rendered in

favor of the appellee against the appellant for damages on account of personal injuries sustained. Goodrich, the appellee, was at the time engaged in the service of the appellant as a switch foreman in its yards at Ft. Worth. It appears from the evidence that the switch engine used by the crew of which appellee was foreman had become disabled, and they were at this time using a road engine for switching purposes. In going from one part of the yard to another, the appellee and the other switchman rode in the cab of this engine; there being no footboard upon which they could stand. At the time of the accident, the appellee was in the cab, and the engine was moving at a rate of speed estimated at from four to ten miles per hour. While thus moving, he attempted to get off by descending the steps of the cab, for the purpose of going across the track in the performance of his duties. In doing so he slipped and fell, sustaining the injuries complained of. As a basis for the liability of appellant, it is claimed that the steps were wet and slippery, that they were insecurely fastened and were out of line and unsteady, thereby causing the appellee to lose his balance and fall. The appellant railway company relied upon the defenses of assumed risk, contributory negligence, and the absence of any serious injury. The testimony was conflicting as to the condition of the steps. That offered by the appellee tended to show that they were at the time wet from a leak in the tank of the engine, and were fastened on to the side of the engine in such a manner as to cause them to yield under the pressure and weight of a person stepping on them. One of the witnesses stated that under pressure they moved two or three inches out of line; the lower end receding back towards the engine that distance from a perpendicular position. There was other testimony to the effect that the steps were safe and in good condition for the use intended to be made of them. The jury returned a verdict in favor of the appellee for $10,000.

In the first, second, and third assignments of error the appellant complains of different portions of the court's main charge. It is unnecessary to discuss those objections in detail. While the paragraph complained of in the third assignment was probably subject to some criticism, we are not prepared to say that giving it was sufficient to cause a reversal of the judgment.

A number of other assignments are presented, based upon the refusal of the court to give special charges requested by the appellant. Most of those were covered by the court in his general charge, and those not embraced within the main charge were correctly refused.

[1] Other assignments complain of remarks made by counsel. Bill of exception No. 1 objects to the following remarks made by counsel for appellee in his closing address to the jury: "Now, how does he (referring to plaintiff) face the future? His only capital was his ability to work, to labor; that was his capital." Objection was made to these remarks by counsel for the appellant, as being improper and outside of the record. Counsel for appellee then added: "I do not refer to his financial condition; not at all. I refer to the fact that he has been 36 years— I said his labor was his capital." Thereupon the court overruled the objection, to which the appellant excepted. Counsel for appellee then continued: "I say so for the reason he says for 36 years he has worked for these companies, and do not believe that a man would continue to work in a dangerous service for the pay he gets unless that was his means of livelihood and unless that was his capital. That is what I mean when I say that his ability to labor is his capital, as is that of the average ordinary laboring man; and I tell you that when a man's ability to labor, and particularly at the time of life when he has almost turned over the hill, I tell you that is an awful serious thing; it is an awful serious thing. And he cannot work; you know that man cannot work. He is injured to-day. He not only cannot work; he cannot even sleep; he cannot eat; he cannot enjoy the ordinary comforts of life." In bill of exception No. 2 complaint is made of the following portion of the remarks of appellee's counsel in his closing address to the jury: "What is the cure for it (the plaintiff's condition) according to Dr. Duringer? How will the poor fellow rest at one of these resorts, or go into a different part of the country, if he hasn't any money to go on or anything to pay for his board or things of that kind?" Counsel for appellant objected to this language, and the court instructed the jury that they would not consider the last statement. Thereupon appellant's counsel excepted to the plaintiff's counsel having made the argument. By bill of exception No. 3 it is shown that testimony had been admitted at the instance of the appellant showing that the appellee had separated from his wife about ten years prior to that time, and that they were still living apart; that she had upon one occasion instituted suit against him for a divorce, but subsequently withdrew the suit. It also shows that there was testimony tending to establish the fact that neurasthenia, from which it was stated the appellee was suffering, is a disease which might be brought on and aggravated by mental anxiety and worry. The bill then states that counsel for appellee, in closing his argument to the jury, thus discussed the introduction of that testimony: "I think they have done this man wrong. I don't think they have treated him right. I think this railroad company when it tries to inferentially blacken a man's name, to show that he is trying to malinger, to break him down before the jury, when they have no evidence on which to do it; but not only that, to go

into his own private affairs and try to lug into it the skeleton in his domestic closet, to show he and his wife have not lived happily, and that—we don't know who is to blame—I say that it is unfair, in my opinion, to attack that poor fellow when he is trying to get his rights from the railroad company." Whereupon appellant's counsel objected to this argument as being obviously unfair and intended to, and calculated to, produce a wrong impression in the minds of the jury, and called the court's attention to the fact that the defendant's inquiry with reference to the plaintiff's domestic trouble was directed solely to whether he had undergone such mental troubles as his doctor had testified would produce neurasthenia. The court then stated that that was the reason he allowed the introduction of the testimony. Counsel for appellee thereupon addressed the jury as follows: "It was admitted for that purpose, but don't you know the sting that was in it? Don't you know that that is so concealed, the idea that the worry from his wife suing him for divorce now, with whom he had not lived for 10 years, and who had sued him 10 years ago, that could be no possible worry to a man, and it was not brought until after this case was tried before? How could that cut any figure excepting possibly to put before you the idea that this man has been unhappy in his domestic affairs and perhaps some juryman would be influenced to scale down a verdict or believe he was not correct to the same extent that he would otherwise believe about it?" Objection to the foregoing argument was overruled by the court. In bill of exception No. 4 objection is made to the following argument by counsel for appellee in the opinion address to the jury: "Now, how much should this man have? Do you think $15,000 or $20,000 is too much? I do not believe it is; and certainly a verdict for $10,000 would be as little as a jury should award this man for his injuries." Whereupon the court stated to the jury that they would not consider that argument; but appellant's counsel excepted to the action of the appellee's counsel in making the argument as he did. It does not appear in the record that any written instructions were requested by counsel for appellant in addition to the oral instructions which the court gave to the jury to disregard those portions of the argument to which he sustained objection.

The first question we are called upon to consider is: Were the remarks improper? Probably some of them were not so far outside of the scope of legitimate argument as to require a reversal of the case; but this cannot be said of them all. The first objection is that there was an allusion to the financial condition of the plaintiff in the suit. Notwithstanding counsel for the plaintiff, when objection was made, disclaimed having made any such allusion, his language was clearly susceptible of no other construction. What else could he mean when he said, "His only capital was his ability to work, to labor"? It has been decided more than once by the Supreme Court of this state that in suits of this character it is improper to admit evidence of the financial condition of the parties. M., K. & T. Ry. Co. v. Nanig, 91 Tex. 347, 43 S. W. 508, and cases there cited. The court, in the case referred to, in discussing that question, says: "The evidence in question in this case threw no light upon any issue properly involved in it, and was calculated solely to awaken the sympathy of the jury, and thereby to swell the damages to be awarded by the verdict. Counsel for the plaintiff evidently thought it would have some effect in plaintiff's favor, else he would not have insisted upon its admission over the objection urged on the part of the defendant. The true rule is that in such a case, in order to hold that the error does not require a reversal of the judgment, it ought clearly to appear that no injury could have resulted from the admission of the evidence. Since it does not so appear with reference to the testimony in question, the judgment must be set aside, and a new trial awarded." If it is improper to admit evidence of the financial condition of the plaintiff, why is it not also improper to acquaint the jury with that condition through the medium of an argument? If the rule requiring a reversal does not apply with equal potency in the latter instance, it is because an argument presumptively receives less consideration at the hands of the jury than is usually accorded to facts established by the testimony of witnesses. While it may be true that some arguments have little or no effect in influencing the verdict of the jury, yet what is then said is intended to influence them, and counsel who wins is in no attitude to say that his argument was disregarded by them. When the court in this instance refused to instruct the jury to disregard the objectionable remarks, they had a right to conclude that such statements were proper to be considered by them in reaching their verdict. Can we say that the verdict was not, in part at least, the product of such considerations? If so, the defendant was wronged, and as much so as if those facts had been conveyed to the jury through testimony erroneously admitted upon the trial. But this reference to the poverty of the plaintiff was emphasized by what followed when counsel said: "What is the cure for it (the plaintiff's condition) according to Dr. Duringer? How will the poor fellow rest at one of these resorts, or go to a different part of the country, if he hasn't any money to go on or anything to pay for his board, or things of that kind?" It is true the court instructed the jury not to consider these last remarks, and that was as far as he was asked to go. But did that

remove their effect? This was the closing argument, and counsel for the defendant had no opportunity to reply. What was here said did not purport to be the statement of facts, but was the suggestion of a reason why the plaintiff should have a verdict in his favor, and was well calculated to arouse the sympathy of the jury. Ordinarily it may be assumed that an instruction by the court telling the jury to disregard certain facts will be obeyed; but we doubt the efficacy of such directions as a means of allaying aroused emotions, such as sympathy for the plaintiff or resentment toward the defendant. It is a matter of common experience that such feelings enter into the conclusions of people at times even against their better judgment.

In the case of Bonner v. Glenn, 79 Tex. 531, 15 S. W. 572, the Supreme Court, after discussing the probable effects of an argument objected to, and refusing to reverse because no written charge had been asked excluding the consideration of the improper remarks from the jury, said: "There may be cases in which language used, especially in a closing argument, is so well calculated to arouse the prejudices of a jury as to make it proper to reverse a judgment, although the court may have done all in its power to destroy its effect. Especially will such language be closely scrutinized when the verdict is against the apparent weight of the evidence." The remarks complained of in the last two bills of exception, standing alone, probably would not be cause for reversal; but, when considered in connection with the arguments before noticed, they did not, to say the least, tend to relieve the situation in any respect. The appellant had the right to have its liability determined according to the established rules of law, and to have the jury restricted to the consideration of the relevant facts admitted in evidence. In the trial of cases the jury get the facts they are to consider through the testimony of witnesses; from the court they get the law applicable to those facts; from the argument of counsel they are supposed to be aided in arriving at their conclusions from those facts.

[2] It was never designed that the privilege of addressing juries should be utilized as an opportunity for getting before them facts not in evidence, nor permissible as such. In this case the verdict was large, considering the testimony with reference to the extent and character of the injuries, and there is much reason for believing that the arguments objected to had something to do with amount. The testimony upon the issue of negligence was in sharp conflict; and, had a verdict been rendered for the defendant, it would have rested upon evidence apparently as satisfactory, if not more so than that which supports this verdict.

We do not hold that the plaintiff under the facts is not entitled to recover; but we are of the opinion that the case should be reversed on account of the arguments used, and it is, accordingly, so ordered.