### HUBB DIGGS CO. v. BELL.　(No. 11380.)

Court of Civil Appeals of Texas. Fort Worth.
Oct. 23, 1926.

Rehearing Granted June 18, 1927. Rehearing Denied July 16, 1927.

1. **Evidence** &#9090;314(2)—**Excluding evidence that chief had issued orders to motorcycle officers regarding speed, in action for death of motorcycle officer caused by truck, held proper, as being opinion and hearsay.**

In action for death of motorcycle police officer caused by collision with truck, excluding evidence that chief of motorcycle police squad had issued orders to all motorcycle officers that they should not operate motorcycles at higher rate of speed than 35 miles an hour *held* proper, such evidence merely implying an opinion of the chief that a speed in excess of 35 miles an hour was dangerous, and being also objectionable as hearsay testimony.

2. **Evidence** &#9090;14—**It is common knowledge that, unless motorcycles are allowed in emergencies to travel at rapid speed, motorcycle squad would be practically useless.**

It is matter of common knowledge that, unless motorcycle officers are allowed in cases of emergency to travel at rapid rate of speed, motorcycle squad would be practically useless for apprehension of criminals making hurried departures from the scenes of their crimes, to quiet riots, etc.

3. **New trial** &#9090;144—**Where juror suggested that plaintiff should be awarded attorney's fees but later disregarded attorney's fees, refusing new trial held proper (Vernon's Sayles' Ann. Civ. St. 1914, art. 2021).**

Where answers of juror showed that he had suggested to fellow jurors that he thought plaintiff should be awarded $5,000 damages and $2,500 attorney's fees, but on further exami-

nation testified that, after being instructed by foreman that attorney's fees could not be considered, he thereafter agreed to verdict of $7,500 which he considered just without regard to attorney's fees, court did not abuse discretion in refusing motion for new trial for misconduct of juror, in view of Vernon's Sayles' Ann. Civ. St. 1914, art. 2021.

**4. Appeal and error ☞232(3)—Instruction defining "proximate cause" held not reversible error, where particular criticism was not called to court's attention.**

Instruction that act becomes "proximate cause" of injury whenever injury is natural and probable consequence of act in question, and ought to have been foreseen in light of attending circumstances, held not reversible error because not embracing question whether injury could have been foreseen by person in exercise of ordinary care, especially where particular criticism was not called to trial judge's attention.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Proximate Cause.]

**5. Statutes ☞117(2)—Statute giving right of action for death held not unconstitutional because caption of act does not include liability for acts of employees (Rev. St. 1925, art. 4671, subd. 1; Const. art. 3, § 35).**

Rev. St. 1925, art. 4671, subd. 1, giving right of action for damages for injuries causing death of any person where death is caused by person, corporation, etc., or his or its agents, held not unconstitutional, under Const. art. 3, § 35, because caption of act omits any statement of liability of parties where injury is caused by acts of servant or employee.

Appeal from District Court, Tarrant County; Ben M. Terrell, Judge.

Action by Mrs. J. D. Bell against the Hubb Diggs Company. From a judgment for plaintiff, defendant appeals. Affirmed. Certified Questions answered, 293 S. W. 808.

Thompson, Barwise & Wharton and George Thompson, Jr., all of Fort Worth, for appellant.

McLean, Scott & Sayers, of Fort Worth, for appellee.

DUNKLIN, J.    The Hubb Diggs Company, a private corporation, has appealed from a judgment against it in favor of Mrs. Ola May Bell, surviving wife of J. D. Bell, for damages as a result of the death of her husband, which occurred by being struck by one of defendant's motor trucks. At the time the deceased was injured he was serving as a motorcycle police officer of the city of Fort Worth and was riding his motorcycle, traveling in an easterly direction on Fourth street, and the defendant's motor truck was being driven by its employee, Willie Bass, in a northerly direction on Commerce street, and the accident occurred at the intersection of that street with Fourth street.

In answer to special issues, the jury found that at the time of the collision between the two vehicles the defendant's driver was operating the truck at the rate of 25 miles an hour, and that in operating at that rate of speed the driver of the truck was guilty of negligence, which was the proximate cause of the injury to and death of J. D. Bell. Those issues were duly tendered in plaintiff's pleadings. The jury further found that as the driver of the truck approached the street crossing where the accident occurred, he failed to sound a horn or give any other signal of his approach to the crossing, and that such negligence was not the proximate cause of the collision. That issue of negligence was likewise tendered in plaintiff's pleadings. The jury also found that plaintiff sustained damages in the sum of $7,500 as the proximate result of the death of her husband.

In addition to a general denial, the defendant pleaded specially that it was a private corporation, engaged in the business of buying, selling, using, and handling Ford trucks and automobiles, but was not engaged in the business of transporting freight or passengers for hire or as a common carrier, and that its employee, Willie Bass, was not its vice principal, and therefore the defendant was not liable for his acts. There was a further plea, in general terms, of negligence on the part of J. D. Bell, which directly and proximately caused or contributed to cause his death. There was another special plea that he was guilty of contributory negligence in operating his motorcycle at a highly reckless and dangerous rate of speed at the time of the accident. The defendant further pleaded that the death of J. D. Bell was an intentional suicide.

The jury found that at the time of the accident Bell was operating his motorcycle at a speed of 38 miles an hour, but in so doing he was not guilty of negligence. They also found that the deceased had not determined to commit suicide, and that his death was not the result of any such intention.

There was a further finding that as he was driving east on Fourth street and approaching the street crossing where the collision occurred, he was traveling on the right-hand or south side of the street, and was not guilty of negligence in so doing. There was also a negative answer by the jury to the general issue submitted as to whether or not Bell was guilty of negligence in the manner and way he drove his motorcycle immediately prior to the accident; and a further finding that the collision in controversy was not the result of an unavoidable accident.

The evidence shows without dispute that at the time of the collision in controversy J. D. Bell was answering an emergency call to 413 East Fourth street, in the city of Fort Worth, the occasion of which call was not shown; that after traveling north on Throckmorton street, he turned east on Fourth street and

continued on that street to the place of collision. A. J. Mitchell, another motorcycle officer, also responded to the same call, and after traveling north on Throckmorton street he turned east on Third street, but stopped when he reached Commerce street and discovered that Bell had been injured. The proof also shows without controversy that in answering emergency calls it was customary for motorcycle officers to travel at a high rate of speed.

[1] There was no error in the exclusion of the testimony of A. J. Mitchell and Jack Cornwall, another motorcycle officer, employed by the city of Fort Worth to perform the same services for which J. D. Bell was employed, which was offered by the defendant, to the effect that Henry Lewis, chief of the motorcycle police squad of the city of Fort Worth, had issued orders to all motorcycle officers that in answering emergency calls they should not operate their motorcycles at a higher rate of speed than 35 miles an hour under any circumstances.

The authorities relied on by appellant to support the assignments of error addressed to the exclusion of that testimony include the following: G. H. & S. A. R. Co. v. Tapley (Tex. Civ. App.) 268 S. W. 491; Barron v. H. E. & W. T. Ry. Co., 249 S. W. 825, by the Commission of Appeals; T. & P. R. Co. v. Hilgartner (Tex. Civ. App.) 149 S. W. 1091, and other decisions cited in the opinions in those cases. In each of those decisions it was held that as a circumstance tending to show negligence on the part of the railway company, upon which negligence the suit was based, the rules and regulations established by the company, forbidding the acts or omissions relied on by the plaintiff as constituting negligence, were admissible in evidence. In the opinion by the Commission of Appeals in Barron v. Railway Co., 249 S. W. 825, the following is said:

"Where it is shown that the defendant company had in effect at the time in question certain rules for the government of its employees, in their operation of its trains, we see no reason why such rules should not be admitted in evidence where the rules in question prohibit the .very practices which plaintiff alleges resulted in his injuries. If the company's own rules are violated, it certainly would be material as tending to show negligence upon the part of its employees. We find it difficult to see how it can seriously be contended that such rules should be excluded. They .are largely in the nature of a declaration against interest, and the general policy of our law has always been to admit such declarations. The railroad company presents no authorities holding such rules inadmissible. We have not found any. We cite two cases which do hold them admissible. Railway Co. v. Hilgartner (Tex. Civ. App.) 149 S. W. 1091; Railway Co. v. Williams, 74 Ga. 723."

And in that opinion the following was quoted from Georgia R. R. v. Williams, 74 Ga. 723, in discussing error assigned to the admission of rules and regulations of the company on the issue of negligence:

"There is none in admitting the rules of the company to go in evidence, though not public rules, but intended for the guidance of its officers and agents only as to what should be done when the train was running backwards.

"It showed that the company regarded that mode of moving the train more dangerous and requiring more care, and was admissible for that purpose, if no other."

It thus appears that in those cases the rules and regulations held to be admissible in evidence were adopted by the defendant company through its duly authorized agents, and we believe that the only principle upon which they are admissible in evidence is that they are in the nature of admissions against interest by a party to the suit. In the present suit it does not appear that the orders given by the chief of the motorcycle police squad, Henry Lewis, to the motorcycle squad, not to operate their machines in answer to emergency calls at a higher rate of speed than 35 miles an hour, was in accordance with any ordinance of the city, or any resolution passed by its governing body authorizing the giving of such an order, and therefore it cannot be said that the giving of the order was the act of the city itself. The city was not sued for damages as the result of the giving of such an order, and it is offered in evidence solely upon the issue of contributory negligence of Bell on the occasion of his injuries in a suit where his widow is seeking to hold the Hubb Diggs Company liable for damages for its negligence. At best, the order given by Chief of Police Lewis merely implies an opinion on his part that it was dangerous to the public for the motorcycle squad to operate their machines at a higher rate of speed than 35 miles an hour. He might have changed that opinion at any time, and any other officer succeeding him in the same position might have entertained an entirely different opinion. If he had been offered as a witness to testify to that opinion, clearly an objection to that testimony would have been tenable, on the ground that it was merely the opinion of the witness upon an issue which it was the sole province of the jury to determine. The proffered testimony of the witnesses Mitchell and Cornwall, referred to above, was objectionable for the same reason and for the added reason that it was hearsay testimony of the opinion of Chief of Police Henry Lewis.

[2] It is a matter of common knowledge that unless such officers are allowed, in cases of emergency, to travel at a rate of speed much more rapid than is usual for other vehicles, the motorcycle squad would be practically useless for the apprehension of criminals making hurried departures from the scenes of their crimes, to quiet riots, relieve persons in distress, etc. And, in recognition of a public necessity, the Legislature, in 1923, fixed speed

limits for motor vehicles traveling on public highways, as shown in articles 789 and 790, Rev. Criminal Statutes of 1925 (Penal Code), but article 791 reads as follows:

"The two preceding articles shall not apply to fire patrols or motor vehicles operated by the fire department of any city, town or village responding to calls, nor to police patrols, ambulances or physicians responding to emergency calls."

Accordingly, we are of opinion that the decisions cited above and relied upon by appellant are inapplicable to this case for the reasons noted.

[3] One of the grounds presented by the defendant in its motion for a new trial was the alleged misconduct of J. O. Dennis, a member of the jury that tried the case, upon allegations that in estimating the amount of damages awarded to the plaintiff he included attorney's fees which he supposed would be required to pay her attorneys for prosecuting the suit. The juror testified upon the motion for new trial, and his testimony is set out in a bill of exceptions appearing in the transcript. While some of his answers to questions propounded by defendant's counsel showed that the juror had suggested to his fellow jurors that he thought plaintiff should be awarded $5,000 damages and $2,500 as attorney's fees, yet, on further examination, he testified positively and without contradiction that when he made that suggestion he was told by the foreman that the question of allowing attorney's fees could not be considered by the jury, and that after that instruction was given the question was not further mentioned, and that thereafter he agreed to the verdict which was returned for an allowance of $7,500, which he considered to be just and reasonable without regard to the question of attorney's fees; in other words, his testimony was to the effect that he obeyed the instructions of the foreman of the jury. The trial judge did not abuse his discretion in refusing to sustain the ground for a new trial, based on the misconduct of the juror. None of the other jurors were called to testify and there was no evidence to show that any of them were influenced by the suggestion first made by Juror Dennis. Article 2021, V. S., Tex. Civ. Statutes; T. & B. V. Ry. Co. v. Geary (Tex. Civ. App.) 194 S. W. 458; Virginia Fire & Marine Ins. Co. v. St. Louis S. W. R. Co. (Tex. Civ. App.) 173 S. W. 487; Campbell v. Campbell (Tex. Civ. App.) 215 S. W. 134; I. & G. N. R. Co. v. Smith (Tex. Civ. App.) 269 S. W. 886.

[4] In the court's charge the term "proximate cause," as used in his instructions to the jury in the submission of the issue whether or not defendant's negligence was the proximate cause of the injury and death of J. D. Bell, was defined as follows:

"By the term 'proximate cause,' as used in this charge, is meant the efficient and moving cause, without which the injury in question would not have occurred; that is, an act becomes the proximate cause of an injury whenever such injury is the natural and probable consequence of the act in question and ought to have been foreseen in the light of attendant circumstances."

Appellant objected to that definition, on the ground that it did not clearly embrace a legal definition of that term, and that it placed a greater burden on the defendant than was imposed by law. But the appellant failed to point out to the trial judge wherein the definition was inaccurate. However, it is insisted on this appeal that the definition should have embraced the question whether or not the injury in question, or some such injury, could have been foreseen by a person in the *exercise of ordinary care*. Appellant cites such decisions as Seale v. Railway Co., 65 Tex. 274, and Trinity & B. V. R. Co. v. McDonald (Tex. Com. App.) 208 S. W. 912. However, the following is said in appellant's brief:

"Appellant frankly concedes that appellee will be able to cite a number of expressions of the Supreme Court of Texas, which seemingly approve such a definition as was submitted by the trial court in the instant case."

Many decisions might be cited defining "proximate cause" as substantially defined by the trial judge in this case, and we conclude that there was no reversible error in that definition, especially as appellant did not call the trial judge's attention to the particular criticism now made of it, and give him an opportunity to obviate that objection.

[5] This suit was instituted under the provision of section 1 of the Act of the Legislature of 1921, page 212, which now appears in the Revised Statutes of 1925 as article 4671 and in the former statutes as article 4694. Subdivision 1 of the article gives a right of action for damages for injuries causing the death of any person in the following terms:

"When * * * the death of any person is caused by the wrongful act, neglect, carelessness, unskillfulness, or default of another person, association of persons, joint-stock company, corporation or trustee or receiver of any person, corporation, joint-stock company, or association of persons, his, its or their agents or servants, such persons, association of persons, joint-stock company, corporation, trustee or receiver, shall be liable in damages for the injuries causing such death."

The caption of the act omits any statement of liability of the parties mentioned in the first subdivision of the act, if injury resulting in death is caused by the acts of a *servant or employee* of such parties, and by reason of such omission from the caption appellant insists that subdivision 1 of the act is void, because in contravention of the provisions of article 3, section 35, of the state Constitution; and, further, that since appellant was not engaged in the business of transporting ei-

ther passengers or freight for hire, none of the remaining provisions of the act are applicable. That article of the Constitution, with certain exceptions, provides that no bill shall contain more than one subject which shall be expressed in its title. In Doeppenschmidt v. I. & G. N. R. Co., 100 Tex. 532, 101 S. W. 1080, it was held that that section of the Constitution requires only the general or ultimate object to be stated in the title, and not the details by which the object is to be attained; and that any provision calculated to carry the declared object into .effect is unobjectionable, although not specially indicated in the title. Johnson v. Martin, 75 Tex. 33, 12 S. W. 321, Snyder v. Compton, 87 Tex. 374, 28 S. W. 1061, and other decisions which might be cited, all hold that any provision calculated to carry the declared object of the bill into effect is not invalid, although it is not specially indicated in the title to the act. Under those authorities the attack upon the constitutionality of the act is overruled.

In his concluding argument to the jury plaintiff's attorney, Mr. Alcorn, made the following argument:

"Gentlemen of the jury, in estimating the amount of damages sustained by plaintiff, Mrs. Bell, you should take into consideration the fact that on account of the loss of her husband she is now required to make her own living, and while earning her own living in this commercial world, she will be subjected to possible insults."

Upon objection by defendant's counsel, the court instructed the jury as follows:

"The argument made by counsel, Mr. Alcorn, is wholly improper and you are instructed not to consider it for any purpose."

Thereupon Mr. Alcorn made the following statement to the jury:

"I withdraw the argument and request the jury not to consider it, as it could form no basis for damages, and these remarks of mine were made unintentionally, and I apologize and ask that you not consider them for any purpose."

The defendant, however, reserved a bill of exception to the argument.

In the opening argument of the case to the jury by Mr. Scott, counsel for plaintiff, the following occurred:

"Argument of Mr. Scott to the jury: Gentlemen of the jury, the motorcycle officer, J. D. Bell, under the laws of the city of Fort Worth, had the right of way.

"Defendant's Counsel (Mr. Thompson): The defendant objects to the argument of Mr. Scott, for the reason it is improper and prejudicial, in that this cause is submitted to the jury on special issues, and counsel for plaintiff is attempting to inform the jury concerning the law of the case, and for the further reason that there is no evidence to sustain the argument made by counsel.

"The Court: Gentlemen of the jury, the ar-

gument made by Mr. Scott is improper and you will not consider it.

"Mr. Scott: Gentlemen of the jury, I want to conform to the court's ruling, but I feel that I have the right to say to you that the law gave J. D. Bell, riding upon his motorcycle, the right of way to do what he did, and gave him, as he rode his motorcycle, the right of way.

Defendant's Counsel (Mr. Thompson) the defendant again excepts and objects to the argument made by Mr. Scott, attorney for the plaintiff, for the reason that the same is outside of the record, and has no evidence to sustain it, and constitutes an infraction of the court's ruling previously made, in that it informs the jury concerning the law of the case, whereas this cause is submitted to the jury upon special issues, and it is made the purpose of biasing and prejudicing the jury against the defendant, and is wholly prejudicial and improper.

"The Court: Gentlemen of the jury, the court has previously instructed you not to consider the character of argument made by Mr. Scott, which is improper, and you are again instructed not to consider same for any purpose.

"Counsel for the Defendant (Mr. Thompson): The defendant reserves its exceptions to the improper and prejudicial argument of Mr. Scott made as hereinbefore set out, and says that the object of said improper argument has been accomplished, and that the jury has been biased and prejudiced by said improper argument, notwithstanding the instruction of the court to the jury not to consider same."

Assignments of error are presented to those arguments of counsel, notwithstanding the court's instructions to the jury not to consider them, and in connection with those assignments appellant has called our attention to the undisputed testimony in the record showing that at the time of the death of J. D. Bell there was a suit then pending for divorce against him by plaintiff in this case, Mrs. Ola May Bell, in which she charged that her husband had been guilty of such cruel treatment that it rendered their further living together insupportable, and on account of which she had separated from him; the suit being filed May 18, 1921, and that death of J. D. Bell occurring on August 12, 1921. But in this connection it is proper to note that upon the trial the plaintiff testified that, after the citation in the divorce suit was served upon her husband, they went back together and had continued to live together in peace until the day of her husband's death.

Defendant also cites the testimony of J. D. Bell's mother, to the effect that on the morning of the day he met his death he visited the witness and told her that his wife had left him again and that he did not intend to live with her again, but was going to try to spend the remainder of his life making his mother and his boy happy, and that but for his mother he would commit suicide.

The recovery of $7,500 was for plaintiff's sole benefit. The record shows that J. D. Bell's mother was made a party defendant,

and that a plea of intervention was filed in behalf of a minor son of J. D. Bell by a former marriage. But the judgment declares that neither his minor son nor Mrs. Barbara Bell, his mother, was entitled to recover any amount, and neither of those parties sought a recovery.

No ordinance of the city of Fort Worth nor other proof was offered to show that J. D. Bell had the right of way at the street crossing where the accident occurred. The argument of Mr. Scott that the deceased had the right of way at the street crossing when there was no evidence upon which to base that argument, and his insistence that the jury should consider it after the court had sustained objection thereto, was highly improper and reasonably calculated to influence the jury to the prejudice of appellant, and the probability that it may have had that effect has convinced us that the judgment should be reversed by reason of such argument. Especially is this true when that argument is considered in connection with the further argument made by Mr. Alcorn, which was likewise improper and of a prejudicial character, and which was withdrawn by him with due apology after the court had sustained the objection thereto, even though we should decide that that argument, standing alone, would not warrant a reversal of the judgment, but which latter question it is not necessary for us to determine.

There is no statute of this state which gave the deceased the right of way at the crossing in question, and, perhaps, counsel in making the argument had in mind some ordinance of the city to that effect, but it is settled that the "courts do not take judicial knowledge of the ordinances of municipal corporations." City of Austin v. Walton, 68 Tex. 507, 5 S. W. 70; I. & G. N. Ry. Co. v. Hall, 35 Tex. Civ. App. 545, 81 S. W. 82.

Section 4 of chapter 12 of the Special Charter of the city of Fort Worth provides that ordinances of the city, published or compiled in book or pamphlet form, shall be presumed to have been by and with the authority of the city, and shall be admitted in evidence in all courts without further proof beyond the production of the printed book or pamphlet. But no ordinance of the character referred to in the argument was introduced in evidence.

In Parker v. Miller (Tex. Com. App.) 268 S. W. 726, a judgment in favor of the plaintiff for damages, which had theretofore been affirmed by the Court of Civil Appeals, was reversed by the Commission of Appeals on account of improper argument to the jury by counsel for plaintiff in discussing a fact not introduced in evidence. In the opinion in that case the following was said:

"It is clear that the remark of counsel was not only calculated to discredit the testimony of Zimriah Parker and prejudice the jury against him, but also that counsel intended for it to have this effect. His conduct was unfair.

As an officer of the court it was his duty to so conduct himself as not to interfere with an effort to award a fair trial before the jury on the issue of fact presented. * * *

"The misconduct here complained of occurred at a time when under the law the jury were the exclusive judges of the facts proved, the credibility of the witnesses, and the weight to be given their testimony. The plaintiffs in error have not had a fair trial before the jury on an issue of fact. * * *

"We cannot agree with the Court of Civil Appeals that the trial court was authorized to deny a new trial on the ground that the preponderance of the evidence supported the verdict and judgment, and recommend that the judgment of both the district court and the Court of Civil Appeals be reversed and the cause remanded to the district court."

And in following that recommendation the Supreme Court said:

"We approve the holding of the Commission of Appeals on the question discussed in its opinion."

In Bell v. Blackwell, 283 S. W. 765, by the Commission of Appeals, a judgment of the trial court, having been affirmed by the Court of Civil Appeals, was reversed by the Supreme Court upon the recommendation of the Commission of Appeals, upon the sole ground of improper argument made by counsel for the winning party, and that argument was not on a question of fact but on a question of law. In the opinion in that case the following was said:

"In M., K. & T. Ry. Co. v. Hannig, 91 Tex. 347, 43 S. W. 508, where improper evidence was admitted, the Supreme Court, through Chief Justice Gaines, said:

" 'The true rule is that in such a case, in order to hold that the error does not require a reversal of the judgment, it ought clearly to appear that no injury could have resulted from the admission of the evidence. Since it does not so appear with reference to the testimony in question, the judgment must be set aside and a new trial awarded.'

"The Chief Justice cites a prior Supreme Court decision for the holding.

"In Houston, etc., Co. v. Gray, 105 Tex. 42, 143 S. W. 606, where the matter of attorney's fees in a personal injury case was improperly discussed in the jury room, Chief Justice Brown said:

" 'If the evidence taken by the trial judge left it reasonably doubtful as to the effect the statement had upon the amount of the verdict of the jury, we would feel inclined to exercise our authority and set it aside.'

"This rule of practice has been expressly approved and followed in later cases. Hines v. Parry (Tex. Com. App.) 238 S. W. 886; Payne v. Harris (Tex. Com. App.) 241 S. W. 1008; Southern Traction Co. v. Wilson (Tex. Com. App.) 254 S. W. 1104; Gulf, etc., Co. v. Harvey (Tex. Com. App.) 276 S. W. 895; Moore v. Ivey (Tex. Com. App.) 277 S. W. 106; San Antonio, etc., Co. v. Alexander (Tex. Com. App.) 280 S. W. 753.

"So that, there being error in the proceedings through which plaintiffs in error lost their

case, the cause should be remanded, unless it affirmatively appears from the record that such error was harmless; or, differently stated, a reversal should follow if there is any reasonable doubt of its harmful effect. There is no reason to hold that this rule should apply to errors of the court in admitting or rejecting evidence and to errors of the court in passing upon the misconduct of the jury, and to deny that it applies to errors of the court in his rulings upon arguments of counsel to the jury. What difference can it make if the jury considers something it should not consider, whether it be through an improper ruling of the court, the impassioned argument of counsel, or the clandestine receipt of information outside the courtroom? The nature of the error is the same, and the consequences to the injured party are identical in each case. There are not different rules of reversal based upon any such fanciful classification of error. Logically, in all cases, the error inheres in the ruling or action of the court, whatever be the subject-matter of such ruling. * * *

"But the question of harmless error was not raised in the cases that have been discussed, and we come now to consider defendant in error's contention that under the circumstances of this case the ruling of the court upon the objections to counsel's argument, even though erroneous, should not work a reversal of the case. The very full printed arguments, evincing deep research into the question by counsel for defendant in error, coupled with the known ability of such counsel, have challenged our best consideration of the question. Aside from this, the question of practice itself is of such importance as to demand careful thought. If the rule of practice in such a case is not already settled by the authorities it should be settled now. In the brief of arguments referred to, counsel assert the following propositions: (1) To authorize a reversal on account of error, there must be a finding of prejudice; (2) improper argument will not be regarded as prejudice where the verdict is supported by the overwhelming weight of the evidence and where any other verdict would have been set aside; (3) whether plaintiff in error was prejudiced by the alleged improper argument of counsel involves an inquiry of fact, and the finding of the Court of Civil Appeals is final. From these propositions, argued at great length and with much learning, it is contended, in view of the findings of the Court of Civil Appeals, the error should not work a reversal. These propositions cannot be sustained under the authorities. Neither of them is sound, but each is contrary to the prevailing rule of decision in this state. We will notice them seriatim. We have seen, in the Hannig Case, that:

"'The true rule is that in such a case, in order to hold that the error does not require a reversal of the judgment, it ought clearly to appear that no injury could have resulted from the admission of the evidence.'

"In the Gray Case, supra, that:

"'If the evidence taken by the trial judge left it reasonably doubtful as to the effect the statement had upon the amount of the verdict of the jury,' a reversal should follow.

"And likewise in that line of cases cited above that the rule in the Gray Case is constantly followed. These authorities are decisive against the contention that to authorize a reversal on account of error there must be a finding of prejudice. On the contrary, they firmly establish the rule to be that, unless it affirmatively appears no prejudice resulted, or that there was no reasonable doubt of the harmless effect of the error, a reversal must follow."

Many other decisions of like character sustaining assignments of error complaining of improper argument to the jury might be cited, such as, Willis v. McNeill, 57 Tex. 465, Dillingham v. Scales, 78 Tex. 205, 14 S. W. 566, Fort Worth Belt Ry. Co. v. Johnson, 125 S. W. 387, Chicago R. I. & G. R. Co. v. Goodrich (Tex. Civ. App.) 136 S. W. 81, Texas & P. R. Co. v. Rasmussen (Tex. Civ. App.) 181 S. W. 212, Am. Express Co. v. Chandler (Tex. Com. App.) 231 S. W. 1085, and First National Bank of Sweetwater v. Porter (Tex. Civ. App.) 204 S. W. 463. And in many of the cases the trial judges had instructed the jury not to consider the arguments that were condemned on appeal, since it is a matter of common knowledge that it is exceedingly difficult to remove from the minds of men bias, sympathy, or prejudice, when once created.

For the reasons noted, the judgment of the trial court is reversed and the cause is remanded.

BUCK, J., not sitting.

### On Motion for Rehearing.

DUNKLIN, J. On a former day judgment was rendered by this court reversing the judgment of the trial court in the above-entitled cause, upon assignments of error presented by appellant to improper argument by counsel for the appellee, as shown in our opinion upon original hearing.

Pending appellee's motion for rehearing, the question whether or not the assignments of error based upon improper argument should be sustained was certified to the Supreme Court for determination. In answer to that question, the Supreme Court adopted with approval an opinion by Justice Bishop, of the Commission of Appeals, filed April 27, 1927, holding that the assignments of error referred to above should be overruled. 293 S. W. 808.

Accordingly, our former judgment sustaining those assignments and reversing the judgment of the trial court and remanding the cause is hereby set aside; the assignments of error referred to above are overruled; and the judgment of the trial court is affirmed. The conclusions reached by this court on all other assignments of error are still adhered to.