CURETON, C. J. The opinion of the Commission of Appeals, answering certified question adopted, and ordered certified to the Court of Civil Appeals.

═══

**BARRON v. HOUSTON E. & W. T. RY. CO.*
(No. 346–3727.)**

(Commission of Appeals of Texas, Section B. March 21, 1923.)

**1. Appeal and error ⇐⇒930(1)—To overturn verdict appellate court must consider evidence in light most favorable to prevailing party.**

When an appellate court undertakes to overturn the verdict of a jury in plaintiff's favor, it must consider the evidence in the record most favorably for the plaintiff from the position of the injured party just before and at the time of the accident, rejecting all evidence favorable to the defendant.

**2. Railroads ⇐⇒400(12)—Contributory negligence held for jury.**

Where plaintiff, who was struck by a box car kicked in on a side track in the course of a flying switch operation, was familiar with the yards and had crossed the track twice within a very short time, but did not look immediately before stepping upon the track, *held*, that the

question of contributory negligence was for the jury.

**3. Railroads ⇐⇒350(16)—Care in looking before crossing track question for jury.**

It is a question for the jury as to the distance from a railroad crossing a party should be when he exercises care to discover a train, and whether or not, having exercised such care once, at a certain place, he should make another effort to discover the train before he reaches the track.

**4. Appeal and error ⇐⇒1163—Practice relative to remanding case to trial court stated.**

Where the Court of Civil Appeals in its opinion, on overturning a jury finding plaintiff not guilty of contributory negligence, indicates that they would have remanded the case as being against the weight of the testimony, it is the proper practice for the Supreme Court on writ of error, upon finding the evidence sufficient to sustain the verdict, to remand the case to the trial court, and not to invade the jurisdiction of the Court of Civil Appeals over the facts.

**5. Railroads ⇐⇒397(1)—Company's rules held admissible.**

In an action for injuries by a box car moved in the course of a flying switch operation in violation of the company's rules, such rules were admissible in evidence on the question of negligence.

McClendon, P. J., dissenting in part.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Action by I. D. Barron against the Houston East & West Texas Railway Company. Judgment for plaintiff was reversed by the Court of Civil Appeals (235 S. W. 335), and plaintiff brings error. Reversed and remanded to the trial court in accordance with the recommendation of Commission of Appeals.

Woods, King & John, of Houston, and John F. Perritte, of Nacogdoches, for plaintiff in error.

Garrison, Pollard & Berry, of Houston, and Russell & Seale, of Nacogdoches, for defendant in error.

POWELL, J. This is an action in damages filed in the district court of Nacogdoches county by I. D. Barron against the defendant in error to recover from said company for injuries he sustained in the yards of the company at Nacogdoches on March 31, 1920. Plaintiff in error was struck by one of the company's box cars during the switching operation of the train, and his left leg so injured that it became necessary to amputate it several inches below the knee. Upon a trial before a jury the trial court awarded Barron a judgment against defendant in error for $10,538.60. Upon appeal to the Court of Civil Appeals at Beaumont, that court reversed the judgment of the district court,

held the plaintiff in error guilty of contributory negligence as a matter of law, and rendered judgment for the railway company. Justice Walker dissented upon the holding with reference to contributory negligence of Barron. For both the majority and minority opinions of the Court of Civil Appeals, see, 235 S. W. 335.

Counsel for Barron, upon proper application therefor, were granted a writ of error by the Supreme Court.

The opinions of the Court of Civil Appeals cover some 18 pages in the Southwestern Reporter, and they state the case fully from every standpoint, including the pleadings, findings of the jury, and facts generally. We do not think it necessary to repeat this statement here in full, but only such of the facts and contentions as have bearing upon the questions we shall hereafter discuss.

In the first place, the jury found the railway company guilty of negligence in several particulars, each of which it found proximately caused Barron's injuries. The Court of Civil Appeals concedes that the record sustains at least some of these allegations of negligence on the part of the railway company. Therefore they would not disturb the trial court's judgment upon the ground that the company was not shown to be actionably negligent. But a majority of the Court of Civil Appeals concludes, contrary to the specific findings of the jury, that Barron was guilty of contributory negligence precluding recovery; in other words, that this record shows, as a matter of law, that Barron was guilty of contributory negligence and that there was no issue of fact for the jury in that connection. We shall first consider this holding by the majority of the Court of Civil Appeals.

[1] When an appellate court undertakes to overturn the verdict of a jury, it must consider the evidence in the record most favorably for the plaintiff from the position of the injured party just before and at the time of the accident, rejecting all evidence favorable to the defendant. The jury had a right to so consider the evidence and the reviewing court must so consider it. This very holding, practically in those very words, was made by our Supreme Court in the case of Kirksey v. Traction Co., 110 Tex. 190, 217 S. W. 139.

Is there any evidence in this record upon which the jury would have been justified in finding, as it did, that Barron was not guilty of contributory negligence in going across the track at the time of the accident as he did? We think there is. For instance, there is ample evidence in the record showing these facts:

Barron, for almost one year prior to the accident, had been employed at the depot office of the American Railway Express Company in Nacogdoches. The main line of the defendant in error runs almost north and south through the town of Nacogdoches; the express office where Barron worked being just to the east of the main line and north of the passenger depot. The switching yards of the railway company were largely south of the passenger depot, and there were several side tracks branching off from the main line on either side, although most of the side tracks were west of the main line.

Barron lived south of the yards and near the railway right of way. It was his custom to go through the yards almost every day in going to his place of business, generally following a cinder path just east of the main line track. Not only so, but he had worked for 8 or 10 years for others whose business was near these yards. He was familiar with such yards and the switching operations which usually took place there.

He had also for some three months been taking to the company's car repairer, at his shed in these south yards, a bottle of milk each morning. The car repairer had driven a nail on his shed where the milk could be hung.

On the morning of the accident Barron left home in the usual way and on the usual route through the yards to reach his office. On his way he saw a freight train enter the yards from the south. Its engine cut loose and went on the first side track, known as the "house track," east of the main line, and headed into about 14 box cars. The engine then pulled these cars off the house track with a view of switching them, and it was customary for this train to kick some cars on one side track and some on another. Barron knew all of these customs, except he said he did not know that the engine, with one movement, sent off a bunch of cars which were later cut into two groups, one group being spotted on one side track and one on another. In other words, Barron denied any knowledge of those so-called double flying or kicking switching operations. There is evidence in the record tending to show that this accident resulted from one of these double kicking operations.

As stated, Barron knew this train was in the yards to his south as he passed on. In fact, he spoke to the engineer as he passed him. Barron went on north and reached the point where the house track branches from the main line. At about that point, and while east of this house track, he turned west, crossing over this house track. As he did this, he looked to see if he could safely do so. He found that the train was working off on the first side track west of the main line and saw box cars going north on that track west of the main line. He was then in the cinder path which goes north between the

main line and house track. At that time he decided, as he walked on north, that he would cross this house track and go east to the car repairer's shed and tell him his father would bring the milk later in the day. As he walked north down this cinder path, he kept his eyes on these cars going down the side track west of the main line. Then, at a point about 90 or 100 feet north of the place where he had first crossed over this house track, he turned east to again cross this same track. Just as he was well on the track, he was struck and knocked down by a string of two box cars which this freight train had kicked onto the house track and which were rolling down thereon at a slow rate of speed.

It is conceded by all the judges of the Court of Civil Appeals, and by counsel for Barron, that, as the latter stepped on the track at the time of the accident, he exercised no care to see if any cars were approaching from the south on the track he was entering to cross.

Did the law require Barron, under the circumstances then present, to see, just as he entered upon the track at the time of the accident, that there were no cars approaching him on that track? As we read the decisions of our Supreme Court and other appellate courts, we think not. We find no decision which so holds. Certainly we have no such statute in Texas.

The more recent decisions relied upon by the railway company are Railway Co. v. Edwards, 100 Tex. 22, 93 S. W. 106, and Railway Co. v. Price (Tex. Com. App.) 240 S. W. 525.

The Edwards Case is sound as applied to the facts there before the court. Judge Williams announces the following general rules:

"The law is well settled that a traveler approaching a railroad crossing must exercise ordinary prudence in going upon the track to see that he may do so with safety. He cannot excuse the absence of all care by showing that those in charge of a train have also been guilty of negligence. This is the precise attitude of the plaintiff, when he claims that he was not bound to look out for himself until the statutory signals were given. His claim cannot be admitted without denying the rule which exacted the duty of due care on his part, a duty as binding on him as was the duty of giving signals binding on the defendant. The case is easily distinguished from those in which this court has held that, under the facts thereof, it would have been improper for the courts to have instructed that it was the duty of the travelers to do any particular thing as a measure of due care, such as to look and listen; it being the function of the jury to say what precautions were called for by the particular situation. Those cases presented issues for the jury to determine as to whether or not the care taken was sufficient, and not bare facts, like those in this case, establishing that no care whatever was taken and offering no excuse for its absence except a reliance on the other party."

It will be observed that Judge Williams does not say at what point in the approach to a crossing a party must exercise care to discover a passing train. He does not say one must look for the train 10 feet before entering the track rather than 50 or 100 feet. Obviously this question would depend on the circumstances of each particular case, and would ordinarily be a question of fact for the jury.

But Judge Williams does hold that the absence of all care will not be excused solely because of reliance by the injured party on the other party to perform its duty. In the Edwards Case the plaintiff said he exercised no care to discover a passing train because he was relying upon the railway company to perform its duty of warning him by sounding statutory signals. Clearly such an excuse will not, in law, avail an injured party.

In the case at bar Barron offers no such excuse for failing to look for cars on the track where he was hurt and just as he stepped thereon at the time of the accident. At least, we think any finding that he did do so is clearly against the great weight of the testimony. There is ample testimony, to say the least of it, to warrant the jury in finding that he was not relying upon any such signals.

In the Price Case this section of the Commission of Appeals held the deceased guilty of contributory negligence as a matter of law and overturned a jury verdict. In that case a man went on a track immediately in front of a slowly moving train without, at any time prior to the accident, taking any precaution of any kind to discover a train. No excuse was offered for this total want of care. Price was going along reading and taking no care of himself at all. In the Price Case this court said:

"The uncontradicted evidence and the specific findings of the jury present a clear case of a pedestrian stepping in front of a slowly moving train under circumstances which present no excuse for his not discovering it."

The Edwards Case and the Price Case are in perfect harmony with each other, and, in our judgment, are entirely sound. We do not think either of them should be overruled.

[2] The proper test in this case is whether or not, under all the facts and circumstances, a reasonably prudent person in Barron's situation would have done substantially as he did. If reasonable minds may differ as to whether or not Barron did exercise ordinary care, the question of contributory negligence is properly one for the jury. See Kirksey v. Traction Co., 110 Tex. 190, 217 S. W. 139; Mitchum v. Railway Co., 107 Tex. 34, 173 S. W. 878; Trochta v. Railway Co. (Tex. Com. App.) 218 S. W. 1038; Railway Co. v. Merchant (Tex. Com. App.) 231 S. W. 327; Jones v. Railway Co. (Tex. Com. App.) 243 S. W. 976; Fer-

rell v. Beaumont Traction Co. (Tex. Com. App.) 235 S. W. 532; Hines v. Arrant (Tex. Civ. App.) 225 S. W. 768, writ of error denied.

We quote as follows from the Supreme Court decision in Kirksey v. Traction Co., supra:

"In the light of all the evidence, so considered, we think that, justly and properly, it cannot be held, as a matter of law, that a reasonably prudent person in James Kirksey's situation would have seen the approaching trolley car and would have stopped his automobile, or sufficiently diverted its course, in time to avert the fatal collision. As to the effect of the evidence bearing upon that point reasonable minds may differ; hence the question properly is one for the jury."

Again, from the same case we quote as follows:

"Conceding that the physical conditions were such that as Kirksey approached said crossing he might have discovered the approaching trolley car in time to have avoided the collision had his thought and attention not been distracted by Deloach's signals to stop and his movement towards the automobile as it slowed its speed, there remained for the jury the question whether under all the facts and circumstances, including said distractions, a reasonably prudent person, in Kirksey's situation, would or would not have done substantially as he did."

It is obviously true that each case of this kind must stand upon its own peculiar facts. In the case at bar Barron admits that, had he made any effort at the very time he started east across the house track and at the very time of the accident, he would have discovered the on-coming cars which struck him. He also admitted that, if he had so discovered them, he would not have attempted to cross in front of them. The undisputed facts show that there were no obstructions in these yards at the time, and that these very cars which struck him could have been seen at practically any point where Barron went that morning.

But the record discloses other facts from which, as we view it, the jury may have concluded that the circumstances just prior to the accident were such as to justify Barron in not trying to discover cars on the house track just a second or so before they struck him. What are these circumstances which tend to excuse Barron?

In the first place, Barron crossed this house track twice, the latter time about half a minute after the first crossing, and the second crossing of it being only some 90 or 100 feet north of his first crossing of it. When he turned west, and crossed it the first time, he exercised his senses and located the freight train which he knew to be in the yards south of him. He found it at that time engaged in switching cars off onto the first side track west of the main line. He evi-dently decided that he could cross the house track in safety at that time. He then turned north, going some 90 or 100 feet, when he turned east across the house track and was almost immediately struck. It seems the cars which struck him were in 8 or 10 feet of him on the house track when he entered upon it. But, after he first crossed the house track, and as he walked north, he watched the cars rolling down on the track west of the main line. The jury might well have decided that, seeing these cars switching on his west, he was justified in concluding that there would be no cars practically upon him on the house track. In other words, the care exercised by Barron in looking for cars as he first crossed the house track and his further action in keeping his eyes on the cars being kicked onto the track west of the main line might have constituted such a course of conduct, in the view of some reasonable minds, as a reasonably prudent person would have adopted for his safety at the time in question. We are not prepared to say that Barron, as a matter of law, did not act for his own safety as a reasonably prudent man would have done. This is far from being a case where a man, at no point in his approach to a railroad, exercises any care for his own safety.

[3] Generally speaking, it is a question of fact for the jury as to the distance from the crossing a party should be when he exercises some kind of care to discover a train. And whether or not, having exercised this care once, at a certain place, he should make another effort to discover the train before he reaches the track is also a question ordinarily for the jury. These rules are distinctly held in the cases of Hines v. Arrant, supra, and Jones v. Railway Co., supra.

In the case of Hines v. Arrant the Court of Civil Appeals says:

"If every one injured in a railroad collision who could by looking and listening discover the approach of the train before going upon the track is to be charged with contributory negligence, it would be difficult to find an instance in which that defense would not be fully established. The situations are exceedingly rare in which travelers cannot, if they will, ascertain whether or not it is safe to attempt a crossing. But the legal test is, not what the traveler could have done had he used his senses, but what an ordinarily prudent person would have done under the particular circumstances. Hence the courts have held that the failure to look and listen before going upon a railway track is not, as a matter of law, contributory negligence. Trochta et al. v. M., K. & T. Ry. Co. (Com. App.) 218 S. W. 1038; Frugia v. T. & Ft. S. Ry. Co., 36 Tex. Civ. App. 648, 82 S. W. 814; H. & T. C. Ry. Co. v. Wilson, 60 Tex. 142. However, it does not follow that the failure to look and listen may not, under some conditions, be treated as conclusively showing contributory negligence. The latter rule is applied when the undisputed facts

show that the failure to use that precaution was an inexcusable act of carelessness of which no person of ordinary prudence would have been guilty. In the case before us the jury had a right to conclude that the appellee thought this train had passed; that when he looked, at a point 50 feet from the track, and saw no train, he might reasonably infer that it was safe to cross; that he was comparatively a new driver, and most of his attention was absorbed in the management of his car. We think these facts were sufficient to pass the question of contributory negligence to the jury."

A writ of error was denied in the Arrant Case by our present Supreme Court.

In the Jones Case aforesaid Section A of the Commission of Appeals held that, when a party looked and listened for a train some 50 feet before reaching the track, it was for the jury to, say whether or not, under the circumstances present, he should look again. In the Jones Case the Commission of Appeals based the judgment it recommended upon above holding. The judgment it recommended was adopted by the Supreme Court. Not only was one motion for rehearing filed in that case by the Railroad Company overruled, but the Supreme Court refused the company permission to file a second motion for rehearing. We take it that the Jones Case, rendered during the present term of the Supreme Court, has had the most thorough consideration by that court and expresses its present views.

If, under the circumstances present in the Jones and Arrant Cases, an effort to discover a train when the traveler was some 50 feet from the point of crossing was all that the law required, when a jury found it was due care, we see no reason why a jury should not be permitted to say that one was in the exercise of due care when he tried to discover a train when 90 feet from the point of crossing, and especially when he continued to try to keep his eyes on the only train which he knew to be in the yards.

We think, with Justice Walker, that contributory negligence of Barron in this case was a question of fact for the jury and not one of law for the courts. We shall not discuss this feature any further, but only refer to Justice Walker's dissent which can be found beginning near the bottom of the second column on page 349 of 235 S. W. and ending near the top of first column of page 352 of said volume.

But, although we differ with the majority of the Court of Civil Appeals in its judgment as to the effect of the evidence in this case upon the issue of contributory negligence of Barron, we cannot set aside its reversal of this case and affirm the judgment of the trial court. The Court of Civil Appeals has held that, under the undisputed facts in this case, as it construes them, Barron was guilty of contributory negligence as a matter of law. It will be assumed, ordinarily, that this hold-ing includes the lesser holding that a jury verdict, upon the same evidence, acquitting Barron of contributory negligence, would be held by the same Court of Civil Appeals to be against the weight of the evidence. See Lee v. Railway Co., 89 Tex. 583, 36 S. W. 63; Choate v. Railway Co., 91 Tex. 406, 44 S. W. 69; Lillienthal v. Indemnity Exchange (Tex. Com. App.) 239 S. W. 906. Assuming that the Court of Civil Appeals would also have held that the verdict on contributory negligence was against the weight of the testimony, the Supreme Court can only remand the case, for the Court of Civil Appeals can reverse and remand a case on the facts, as being against the weight of the evidence, and such a reversal is binding upon the Supreme Court.

[4] But in the case at bar we are not relegated to a reliance upon the assumption mentioned in the authorities just cited. For in this case the majority of the Court of Civil Appeals repeatedly, in a very long opinion, makes statements of facts which leave no doubt in our mind but that they would have remanded this case, in so far as the issue of contributory negligence is concerned, as being against the weight of the testimony and without sufficient support in the record. This being true, it is the proper practice to remand the case to the trial court and not invade the jurisdiction of the Court of Civil Appeals over the facts of the case. For two very recent authorities discussing this very question we refer to Turley v. Campbell (Tex. Com. App.) 241 S. W. 682; Brown v. City Service Co. (Tex. Com. App.) 245 S. W. 656.

In this case the jury also awarded a recovery to Barron on the theory of discovered peril. For instance, we refer to the findings of the jury upon special issues 11 and 12, as follows:

"(11) That appellant's brakeman, Will Dukes, saw and realized appellee's perilous position as the cut of cars which caused the injury approached him in time to have warned or informed appellee of the approach of said cars, so as to have enabled appellee to have avoided contact with said cars.

"(12) That appellant's brakeman, Dukes, after so discovering plaintiff's perilous position, failed to give to appellee such warning as an ordinarily prudent person would have given under the same or similar circumstances."

In passing upon this issue of discovered peril, the Court of Civil Appeals was unanimous. In this connection they say:

"It fully appears, beyond any question in our minds, that this negro did all that lay within his power to warn appellee of this approaching danger during the short time that was permitted him to do so, and that his failure to get appellee's attention and thereby save him was not because of any failure on his part to exercise ordinary care in the use of the means then at his command to prevent appellee's injury."

The negro brakeman in question was on top of, and in charge of, the cut of box cars which were going north, at the time of the accident, on the west side track, and counsel for Barron contend that he realized the latter's peril in time to have warned him off the track before he was injured.

In the face of this finding by the Court of Civil Appeals, the Supreme Court could not, in any event, affirm the judgment of the trial court on the theory of discovered peril. The most that it could do would be to remand the case, if it should decide that the evidence on the trial, as shown by the record, raised that issue. The Court of Civil Appeals would unquestionably have remanded this case, if that were the only issue involved, upon the ground that the evidence was insufficient to sustain the jury finding upon discovered peril.

The case must be remanded anyway, as we see it, in view of our recommendation on the issue of contributory negligence. We do not think it necessary to pass further on the issue of discovered peril. In view of another trial we do not think it best to discuss the facts where it is not necessary to do so. The Court of Civil Appeals has announced correct principles of law as to discovered peril (Railway Co. v. Breadow, 90 Tex. 30, 36 S. W. 410), and we would not like to anticipate whether or not the evidence upon this point on another trial will raise that issue.

This disposes of all the assignments in the application. The Court of Civil Appeals passed on no other questions.

There are no assignments by the railway company, either here or in the Court of Civil Appeals, which could in our judgment, in any event, authorize any other judgment herein than a reversal and remand of the case. We do not think any of the questions presented can cause any trouble upon another trial of this case after what we shall now proceed to say:

In passing upon the issue of contributory negligence, we have cited authorities which state the law controlling that issue. They will be a sufficient guide to court and counsel upon the law governing the main issue in this case. The law with reference to the right of the railway company to have its contentions affirmatively presented to the jury by special charges has been fully discussed in three recent cases. We now cite the court and counsel to them, as well as the authorities therein cited. We refer to the cases of Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S. W. 517; Railway Co. v. Gorman (Tex. Com. App.) 245 S. W. 418; Railway Co. v. Miller (Tex. Com. App.) 247 S. W. 503. The Fox Case is an opinion by Justice Greenwood for the Supreme Court. The other two are cases in which the opinions of this section of the Commission of Appeals answering certified questions were adopted by the Supreme Court. We think a careful reading of our opinion in the case at bar and the authorities cited, as well as the last three cases just above cited, will render practically impossible any difficulty in properly charging the jury in this case upon another trial.

[5] The only assignment in the record alleging error in the admission or exclusion of testimony was with reference to the admission of certain rules alleged to have been promulgated by the railway company for the guidance of its employees in operating its trains. Where it is shown that the defendant company had in effect at the time in question certain rules for the government of its employees in their operation of its trains, we see no reason why such rules should not be admitted in evidence where the rules in question prohibit the very practices which plaintiff alleges resulted in his injuries. If the company's own rules are violated, it certainly would be material as tending to show negligence upon the part of its employees. We find it difficult to see how it can seriously be contended that such rules should be excluded. They are largely in the nature of a declaration against interest, and the general policy of our law has always been to admit such declarations. The railroad company presents no authorities holding such rules inadmissible. We have not found any. We cite two cases which do hold them admissible. Railway Co. v. Hilgartner, 149 S. W. 1091; Railway Co. v. Williams, 74 Ga. 723. The Hilgartner Case was by the Court of Civil Appeals at El Paso, and the Supreme Court denied a writ of error in that case. The Williams Case was by the Supreme Court of Georgia. In this latter opinion Chief Justice Jackson says:

"(2) There was no error in denying the company the right to open and conclude the case on the plea of justification.

"(3) There is none in admitting the rules of the company to go in evidence, though not public rules, but intended for the guidance of its officers and agents only as to what should be done when the train was running backwards. "It showed that the company regarded that mode of moving the train more dangerous and requiring more care, and was admissible for that purpose, if no other."

The rules introduced in evidence in the case at bar had direct bearing on several of the particulars in which the railway company was alleged to have been negligent in the operation of its train at the time of the accident. They were clearly admissible, as we see it.

It follows, from what we have said, that we think the judgments of the district court and Court of Civil Appeals should be reversed, and the cause remanded to the former for another trial not inconsistent herewith.

McCLENDON, P. J., does not concur in the holding that plaintiff was not guilty of contributory negligence as a matter of law.

under the rules announced in the Edwards and Price Cases as applied to the facts of this case.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.