### GULF CASUALTY CO. v. BOSTICK.

#### No. 10564.

Court of Civil Appeals of Texas. Galveston.

April 21, 1938.

Rehearing Denied May 12, 1938.

Masterson & Bryan and Carlos B. Masterson, all of Angleton, Archie D. Gray and Walter C. Clemons, both of Houston (John E. Green, Jr., of Houston, of counsel), for appellant.

Allen, Helm & Jacobs and Ira J. Allen, all of Houston, for appellee.

CODY, Justice.

This suit was brought by appellee against appellant in the district court of Brazoria county, under the Workmen's Compensation Act, Vernon's Ann.Civ.St. art. 8306 et seq. He alleged he had sustained an injury in the course of his employment for Gulf Production Company on November 6, 1935, making the usual allegations with reference to the award by the Industrial Accident Board, notice of appeal, the amount of weekly compensation he claimed was due him, and the other jurisdictional matters. Appellant answered by general demurrer and general denial. For greater convenience appellee and appellant will here be designated plaintiff and defendant, respectively, as they were in the trial court.

At the conclusion of the trial defendant moved for an instructed verdict in its favor, which was refused, and the case was submitted on special issues, which (without the definitions given in the charge, and other matters immaterial for present purposes), together with the jury's answers thereto, were as follows:

"Special Issue No. 1. 'Do you find from a preponderance of the evidence that C. C. Bostick received an accidental injury on or about November 6, 1935?' Answer: 'We do.'

"Special Issue No. 2. 'Do you find from a preponderance of the evidence that the injury received by C. C. Bostick, if any, on or about November 6, 1935 resulted in incapacity to work and earn money?' Answer: 'We do.'

"Special Issue No. 3. 'Do you find from a preponderance of the evidence that such injury, if any, was received in the course of the employment of C. C. Bostick with Gulf Production Company?' Answer: 'We do.'

"Special Issue No. 4. 'Do you find from a preponderance of the evidence that such injury, if any, was received while the said C. C. Bostick was furthering the business or affairs of Gulf Production Company?' Answer: 'We Do.'

"Special Issue No. 5. 'Do you find from a preponderance of the evidence that such injury, if any, resulted in total incapacity as that term has hereinbefore been defined to you, to work and earn money?' Answer: 'We do.'

"Special Issue No. 6. 'If you have answered Special Issue No. 5, "we do," and only in that event, then answer this issue: "Do you find from a preponderance of the evidence that such total incapacity, if any, is permanent as that term has hereinabove been defined to you?"' Answer: 'We do not'.

"Special Issue No. 7. 'If you have answered Special Issue No. 5 "we do" and Special Issue No. 6 "We do not," and only in that event, then answer this Issue: "For how many weeks, if any, do you find from a preponderance of the evidence was, or will, C. C. Bostick, be totally incapacitated to work and earn money as a result of the injury, if any, received by him on or about November 6, 1935?"' Answer: '1 week—3 days.'

"Special Issue No. 8. 'If you have answered Special Issue No. 1 "We do" then answer this issue: "Do you find from a preponderance of the evidence that such injury if any, has resulted, or will result, in any partial incapacity to work and earn money?"' Answer: 'We do.'

"Special Issue No. 9. 'If you have answered Special Issue No. 8 "We do" then answer this issue: "Do you find from a preponderance of the evidence that such partial incapacity will be permanent?"' Answer: 'We do.'

"Special Issue No. 10. 'If you have answered the foregoing Special Issue No. 9, "We do not," and only in that event, then answer this issue: "For how many weeks, if any, after the injury, or termination of total disability, if any, do you find from a preponderance of the evidence was or will C. C. Bostick be partially incapacitated to work and earn money as the result of the injury, if any, received by him on or about November 6, 1935?"' Not answered.

"Special Issue No. 11. 'If you have answered Special Issue No. 8 "We do," and only in that event, then answer this special issue: "What do you find from a preponderance of the evidence to be the percentage of such partial incapacity, if any?"' Answer: '50%.'"

"Defendant's Special Requested Issue Number A: 'If you have answered Special Issue Number 2 "We do" and only in that event you will then answer the following: "Do you find that the failure of the Plaintiff to comply with and abide by the doctors' instructions and advice is not the sole cause of his present condition?"' Answer: 'It is not.'"

"Defendant's Special Requested Issue Number B: 'Do you find from the preponderance of the evidence that the Plaintiff's present ailment, if any, is the result of his own failure and neglect to care for himself as an ordinarily prudent person would have done under the same or similar circumstances?' Answer: 'No.'"

Defendant urges, as cause for reversal of the trial court's judgment, three main points. First, that the proof showed that plaintiff had obtained a more strenuous job at a more lucrative wage than he was receiving at the time of his injury, within a short time after his injury, and so was not entitled to recover. Second, that the proof failed to show any incapacity as a result of the injury alleged in the petition, but, to the contrary, showed he was suffering from rheumatism and malaria, which was in no manner brought about, or alleged to have been brought about, by the injury. Third, that the evidence was wholly insufficient for the jury to base any finding as to either the extent or duration of plaintiff's disability.

The facts necessary to an understanding of defendant's first point, i. e., the contention that plaintiff had taken a more strenuous and better paid job shortly after his injury, are as follows:

Plaintiff had been a lineman employed by the Houston Lighting & Power Company

for many years, off and on, prior to the time he was employed by the Gulf Production Company as a driller's helper. While employed by the Gulf Production Company, plaintiff was injured by a fall, on November 6, 1935. Prior to the date of his injury he had orally applied to such former employer, Houston Lighting & Power Company, for a job as a lineman and would have liked to have gone to work for it. Plaintiff reported his injury to his foreman when it occurred. He was unable to continue working after receiving the injury, but reported for work the next night. He arranged, however, for some one else to take his place on the third day, and, on the insistence of his superior, fired the boiler for one night instead of working as a driller's helper; but after that, he went to the Houston Clinic, in Houston, for treatment. At the Houston Clinic he was advised that no bones had been broken, and that it was thought he could go back to work. He therefore went back to the field, but was in too much pain to work at his regular employment of driller's helper, so was sent to look after the firing of the boilers for that night. On the following day (a Saturday) he went home, suffering pains in his back and leg. On the succeeding Monday he again went to the Houston Clinic, where they found evidence of bruise and bound and taped his back. Plaintiff then reported to his employer that he was not able to go back to work. A few days after his fall, the Houston Lighting & Power Company advised plaintiff they had a job for him as a lineman, and he thereupon filed a written application for such job on November 12, 1935. In his application he did not mention the Gulf Production Company as one of his employers during the last preceding five years, in response to the question therein contained as to whom he had worked for during that period. He was given a physical examination before going to work for the Houston Lighting & Power Company by its doctor, but never told that doctor about his fall. He went to work for such company on November 18, 1935, as a lineman for $145 per month; he had been receiving $118 a month from the Gulf Production Company as driller's helper. Plaintiff testified that he did not feel like working when he began working as a lineman, but had to do so to support his family, and that he was not able to do his usual work, and could not have held his linesman job if it had not been for friendship. His boss,

however, and certain others testified that he performed all his duties as lineman until the latter part of February, 1936. From the time his fall occurred until March 6, 1936, defendant paid plaintiff, under his claim of injury, weekly compensation at the rate of $16.82, or a total of $285.94. During the time he was receiving this compensation he made periodic visits to defendant's office, but never advised it that he was working. When defendant discovered that plaintiff was working it stopped payment of his compensation. Plaintiff then instituted this suit. Subsequently, and before the case was tried, plaintiff was reduced by the Houston Lighting & Power Company to a lineman's helper at $93 per month; he having complained that he was unable to do a lineman's work. Plaintiff claimed that it was only because he was favored by his friends and the friends of his father, who had been long connected with the Houston Lighting & Power Company, that he was able for a time to draw full pay as a lineman. On November 23, and on December 3, 1935, plaintiff filed applications to collect insurance from the National Protective Insurance Company of Kansas City, and in such applications he stated he was confined to his home.

We are unable to sustain defendant's first assignment of error. It is elementary that the determination of the question of whether an injury has resulted in disability—total or partial, permanent or temporary—is ordinarily one of fact for the jury. The evidence offered by defendant tended to prove that plaintiff's injury was only a mild one of brief duration, and that such injury did not prevent plaintiff from accepting a better paid job, in connection with which the exertions necessary to the discharge of its duties were at least as heavy as those required to discharge the duties of the job of driller's helper. Defendant's evidence further tended to prove that plaintiff continued to discharge the duties of lineman for the Houston Lighting & Power Company from within a few days of his fall until about the time defendant ceased making payments of compensation to him, after discovering that he was employed by the Houston Lighting & Power Company. Defendant's evidence would certainly have sustained, but did not require as a matter of law, findings by the jury favorable to defendant. Indeed, in practical effect, the issue between plaintiff and defendant before the jury was whether plaintiff

was fraudulently pretending to be suffering from an injury, and was malingering on his job with the Houston Lighting & Power Company, at the time of the trial in order to lessen his wages and thus give color to his claim that he was suffering partial disability. The substance of plaintiff's evidence has been stated above. If his evidence was true he was suffering partial disability at the time of the trial. The question of his credibility was one for the jury. We therefore overrule the assignment. The cases cited by defendant in this connection were cases where there was no dispute as to the facts, and so are not in point, and are therefore not discussed.

We now pass to defendant's assignment to the effect that the material allegations in plaintiff's petition and the proof made thereunder failed to show that plaintiff was suffering from any injury for which he was entitled to recover under the Workmen's Compensation Act. These allegations were: "That when claimant fell and struck his said back and the lumbar region thereof on the end and edge of said steep steps his back was crushed and pinned against said steps, which caused a severe sprain to the muscles, ligaments, nerves, blood vessels, vertebrae, and internal organs in the vicinity of said lumbar region of the back. That said injury caused great and excruciating pain at the time, and at all times since the date of said injury the said pain has continued, particularly in the lumbar region of the back, in the right sacro iliac joint, in the mid-sacral area, and the sciatic nerve has become affected, causing numbness to the right leg which causes pain to shoot all the way down from the right hip and lower back region to the foot of the right leg, particularly causing severe pain to the right tibia and right shin bone. That said injuries to the claimant resulted in total disability, and such total disability will be permanent. Claimant further says that the injuries to his spine and back have injured his entire nervous system, particularly the sciatic nerve, which has caused him to lose the use of his right leg and has permanently crippled and paralyzed said right leg, which disability will continue permanently."

From the foregoing allegations it appears that plaintiff sought recovery for general disability under sections 10 and 11 of article 8306, R.S.1925, and not for loss of specific members of his body under section 12 thereof. It was proper, therefore, for the court to submit the alternate issue of general disability. See Texas Employers Ins. Association v. Hamor, Tex.Civ.App., 97 S.W.2d 1041; Texas Employers' Ins. Association v. Arnold, Tex.Civ.App., 57 S.W.2d 954.

Whether the proof made in this case showed that plaintiff was suffering from an injury which he was entitled to recover for under the Workmen's Compensation Act is the most serious question raised in this case. This is not due to any failure of the testimony of plaintiff to connect the pain he suffered in his back as the direct result of the fall. According to his testimony he had been a healthy and robust man until this fall occurred, without any trouble in his leg or back; he further testified that from and after the fall, and up until the trial, he had no feeling in a part of his leg and much pain in his back, and suffered from nervousness and want of sleep. The evidence of Dr. Milliken was to the effect that when he examined plaintiff in January he found no bruise or other external evidence of injury caused by the fall; that he did find a condition of rheumatism in the back; that he learned from Dr. Thorning of the Houston Clinic, where plaintiff had been examined soon after his fall, that no evidence of any condition of rheumatism was then discernible. Dr. Milliken further testified that it took more than an injury to produce the condition of rheumatism which he found in plaintiff's back; that an injury such as plaintiff's "history" disclosed gave a lowered resistance, and presented a more fertile ground for the development of an infectious process. He then illustrated his meaning by taking the case of a hand becoming infected, following a blow, saying that there were bacteria always present on the hand which were harmless until resistance against them was lowered as a result of the weakening produced by the blow, that an infection to the hand was not the direct result of a blow to it, but an infection set up because of the weaker resistance produced by the blow. So in the present case, development of rheumatism was not the immediate result of the injury the back received, but the injury plus the infection; that trauma itself will not cause infection; that there are plenty of backs that are injured that do not have rheumatism developed in them; that injury plus infection causes disability. He further testified that he could find no other source for the condition of rheumatism which he found in plaintiff's back except the history of injury. Defendant, under the authority

of Texas Pacific Fidelity Surety Co. v. Hall, Tex.Civ.App., 101 S.W.2d 1050, writ of error dismissed, and Texas Employers' Ins. Ass'n v. Burnett, Tex.Com.App., 105 S.W.2d 200, contends that such evidence fails to make out an injury compensable under the Workmen's Compensation Act.

In the Hall Case the claimant died from pneumonia five years after his injury. The medical testimony was to the effect that the injury made Hall more susceptible to contracting diseases than if he had not sustained it. But it is a matter of common knowledge that men in the pink of health contract pneumonia and die with it. There was no evidence tending to eliminate or minimize all other possible causes and thereby warrant the inference that the pneumonia was in fact caused by Hall's physical condition. It was therefore held in that case that the evidence that Hall's physical condition rendered him more than ordinarily susceptible to pneumonia was no evidence that such condition in fact caused his pneumonia; the court stating (page 1052): "A number of decisions support the proposition that if an inference consistent with the existence of a fact in issue is but equally as valid as an inference of its nonexistence, then the jury may not determine the question"—citing authorities. The court further called attention to the fact that there was no opinion evidence that Hall's condition of susceptibility was the cause of his pneumonia. The instant case differs from the Hall Case in the following respects: The claimant was free from disability until his fall. From the date of his fall until the date of the trial, according to his testimony, he was not free from pain and disability. He attributed his condition to his fall. A medical examination failed to reveal any other source to account for his rheumatic condition, except infection following the lowered resistance produced by trauma. Dr. Milliken, after testifying to plaintiff's general healthy condition, was asked the question: "Did you find in C. C. Bostick any reason for this rheumatism, or any basis for this rheumatism, other than the history of the trauma which he gave you?" To which he answered, "No, sir; in this instance, I did not find any source of infection that I could pin my * * *." Having testified that trauma, could by lowering resistance, induce infection producing the rheumatism which he found, and that he had eliminated other sources, it was thereby brought within the province of the jury to draw the in-

ference whether the rheumatism was a disability produced by the fall. But it still remains to determine whether such a disability is compensable under the Compensation Act.

In the Burnett Case, supra, the Court of Civil Appeals, 77 S.W.2d 742, 743, had found that "Burnett died of typhoid fever, contracted about two weeks before his death, which was about eleven months after he was injured. Typhoid fever is a germ disease, and the fact that Burnett was injured on the 26th of August, 1930, contributed in no way to his contracting the disease, but, as a result of his injuries, his 'personal' resistance was lowered, and the issue was raised by the evidence that his 'lowered resistance' was a 'producing cause' of his death." The Commission of Appeals, speaking for the Supreme Court through Judge German, said (page 201): "Compensation for either disability or death must have for its foundation an 'injury' received by an employee in the course of employment. Our compensation law has defined 'injury' in this language: 'The terms "injury" or "personal injury" shall be construed to mean damage or harm to the physical structure of the body and such diseases or infection as naturally result therefrom.' (Rev.St.1925, Article 8309, § 1)." He then went on to say: " * * * that diseases which naturally result from an injury are [by the quoted statute] classed as an injury, and if an employee be incapacitated thereby, or if he die therefrom, compensation is allowed. On the other hand, it was held in the case of Buchanan v. Maryland Casualty Co., 116 Tex. 201, 288 S.W. 116, that death by typhoid fever contracted by an employee as the result of impure water or food furnished by an employer is not compensable. * * * It is not even contended in this case that the death was the result of the injury. The finding, which is shown by the undisputed proof, that the employee died 'as a direct result of typhoid fever, which was in no way produced or caused by the injury,' negatives the idea that the death was the result of the injury. It is only contended that the injury may have to some extent lowered the resistance of the employee, and in that way probably contributed to some extent to his death. There was no positive testimony that Burnett's resistance was lowered by reason of the injury, and no positive proof that such reduced resistance, if any, materially contributed to his death. The testi-

mony tending to prove each of these factual conclusions was entirely conjectural. With a disease like typhoid fever, it is a matter of pure speculation to say that the victim would not have died but for the lowered resistance, the extent of which was left to conjecture. By whatever term we may attempt to define the causal connection between the injury and the death, in the absence of a disease or infection which is the natural result of the injury, there must be shown a direct causal connection between the injury and the death, with no efficient intervening agency, with sufficient certainty that it may be reasonably concluded that death would have resulted from the injury, notwithstanding the subsequently intervening disease. If but for the intervening independent disease the employee would not have died, then it is obvious that the adequate and just compensation contemplated by the law could have been allowed under the disability provisions of the statute."

██ Typhoid fever could not possibly be classed as a "disease or infection" that naturally resulted from damage or harm to the physical structure of the body. In the instant case, however, it appears from Dr. Milliken's testimony that from the injury to the physical structure of the body resulting from a blow, such as plaintiff gave a history of receiving, infection could set in after the same manner that infection might set in in the hand, following a blow to it. And it is perfectly clear that if a workman's hand was injured in the course of his employment, and it became infected so that blood poisoning resulted, the disability consequent upon the blood poisoning would be an injury, under the statute. So, in the instant case, under the evidence of Dr. Milliken, the jury were authorized to draw the inference that the condition of rheumatism that he found in plaintiff's back was probably the result of the trauma, as no other source to account for such condition could be found, and such conditions do result from infection following trauma. In other words, to entitle plaintiff to recover for the rheumatic condition of his back as being a disability sustained in the course of his employment, it was necessary for him to present evidence from which the jury was warranted in drawing the inference that the fall damaged the physical structure of the body and that the condition of rheumatism was the consequence of infection that resulted naturally therefrom.

██ We have assumed that medical science has advanced to the stage that, by a physical examination, Dr. Milliken could tell that there was nothing wrong with the back to cause plaintiff pain and disability, except rheumatism. But the doctor did not so state. His testimony was that was all he could find. The evidence of plaintiff, as heretofore indicated, was that before his fall he was strong and robust, and that following the fall he was disabled to work as he could theretofore, and that he continued to be so disabled; that he could not sleep as he could formerly. In other words, we are not here dealing with a case that depends entirely upon expert evidence. Only the plaintiff knew, by experimental knowledge, whether his back hurt him, and disabled him from working. Dr. Milliken had no way of knowing that plaintiff's back hurt him except by what plaintiff told him. The jury was entitled to take his testimony into account, and if they found it credible, his testimony together with Dr. Milliken's was sufficient to sustain their findings with reference to partial disability. Testimony of physicians is not binding on the jury, but is advisory only, where the injured party testified himself. National Life & Acc. Co. v. Muckelroy, et al., Tex.Civ.App., 40 S.W.2d 1115; 19 Tex.Jur. p. 40.

██ We have carefully examined the evidence bearing on the duration and extent of plaintiff's injury, and the cases cited by appellant in support of its contention that there was no basis for the jury to find that plaintiff had suffered 50 per cent. permanent disability, and that such finding was a mere surmise or speculation. It is undoubtedly true that such finding was an estimate. The extent and duration of a personal injury is very frequently a matter which the jury has to estimate by finding the monetary equivalent in damages. The mere difficulty involved in estimating the extent and duration of a disability does not prevent the jury from exercising its function. Texas Employers' Ins. Ass'n v. Shilling, Tex.Com.App., 289 S.W. 996, 998. If it were otherwise, the Workmen's Compensation Act would be very restricted in its application. In the present instance the testimony of Dr. Milliken was to the effect that he could not tell that there had been any improvement, and that he could not tell that he had become any worse. He illustrated the difficulty of estimating how long the disability would continue by referring

to cases of other patients that he had treated, some of whom had gotten well, and some of whom had not. He then testified there was no way for him to estimate how long the disability to the back would continue, and he did not think any one else could. The case was tried some nine months after the injury. Based upon the doctor's testimony, and plaintiff's testimony that he was then no better, and from the evidence showing plaintiff's diminished earnings, it was competent for the jury to estimate the extent and duration of plaintiff's injuries.

We have examined all of defendant's assignments of error. They are all overruled. Those which are not here discussed are fully answered by plaintiff. They relate to matters of practice, and we believe no good purpose will be served by further lengthening this opinion merely to show that there appears to be no proper basis in the record for such assignments so as to make the claimed errors available.

Judgment affirmed.

PLEASANTS, C. J., absent.