Cr.R. 489, 145 S.W.2d 881, and authorities there cited.

Bill of Exception No. 3 is similar to Bill No. 1, and what we have said in disposing of that bill also applies with equal force to Bill No. 3.

The court, in his charge to the jury, instructed them as to the law on every issue that was raised by the evidence, although the evidence on some of the issues was very meagre. Furthermore, appellant urged no objections to the charge.

All other matters complained of have been carefully examined by us and found to be without merit.

It is therefore ordered that the judgment of the trial court be, and the same is, in all things affirmed.

PER CURIAM.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## TEXAS EMPLOYERS' INS. ASS'N v. MASK et al.

### No. 2447.

Court of Civil Appeals of Texas. Eastland.

April 28, 1944.

Ramey, Calhoun, Marsh, Brelsford & Sheehy, of Tyler, and W. I. Davis, of Center, for appellant.

E. J. McLeroy, of Center, and Collins, Williams & Garrison, of Lufkin, for appellees.

GRISSOM, Justice.

This is a workman's compensation case brought by Mrs. Beulah Mask and Alva Mask, widow and son, respectively, of C. M. Mask, deceased, against Texas Employers' Insurance Association to recover compensation for the death of C. M. Mask on October 25, 1942. The injury was claimed to have been received by Mask on September 14, 1942, while he was acting in the course of his employment for B. & W. Construction Company, Inc. There was a judgment for the plaintiffs based upon a jury verdict, and the insurance carrier has appealed.

Only two questions are presented on this appeal. Defendant contends that there was no evidence, or no sufficient evidence, that (1) C. M. Mask received an accidental injury to his kidney, and (2) that such injury was a producing cause of his death.

There was evidence that on September 14, 1942, deceased was engaged in stacking six and eight inch iron pipe; that some of the joints of the pipe were forty and others sixty feet long; that the shorter pipe weighed several hundred pounds and was hard to handle; that some of the pipe had two joints welded together; that, under the direction and upon the insistence of his foreman, Mask tried to lift a heavy pipe; that he raised it about six or eight inches from the ground; that he dropped it and cried out that he had hurt his back, that he had torn something loose, that he had hurt his back and hurt it bad and torn something loose and had to go to the house and go to bed; that immediately

thereafter he walked a few feet bent forward, holding his back with his hands, and sat down. That Mr. Mask, prior to this occasion, was a strong, healthy appearing man; that he had done hard manual labor many years prior to this occasion; that he was a good workman; that he had been doing hard, strenuous labor without difficulty; that ordinarily his face was red, that immediately after this occurrence his face was very white. Mask's fellow workman, who testified to the foregoing facts, further stated that he visited deceased at his home the second or third night after the accident; that Mask was in bed; that he appeared to be. suffering; that large quantities of blood passed from his kidneys; that he couldn't rise from his bed without assistance; that he cried out in pain; that every time he moved he would complain of his back hurting him. His wife testified that when Mask returned to his home after the accident, that he said he had hurt his back lifting a pipe; that he didn't sleep any that night; that he suffered every time he moved and had an awful pain in his back and side; that on Friday night following his injury he almost cried all night; that he was up and down all night; that he steadily grew worse; that he had fever; that he was finally carried to a sanitarium where he died about 40 days after lifting the pipe. Dr. Windham testified that he was called on the case on October 13th; that he made an examination of Mr. Mask and got a history of his case; that Mask told him he had hurt his back lifting a pipe; that when he saw Mask he had an awful lot of pain and had a great deal of soreness and tenderness in his back and abdomen; that Mask couldn't turn over; that he was lying on his side, and that he examined Mask the best he could; that he had to turn him on his back; that he palpated his abdomen and back; that it caused Mask an awful lot of pain to move him. Dr. Windham again went to see Mask on October 20th. He·testified that Mask had grown considerably worse and had definite peritonitis on October 20th; that he was distended quite a bit; that he had him removed to the hospital where he treated him until he died; that he died from peritonitis. He was asked what caused the peritonitis. He answered: "Well, it was some traumatic injury; internal injury to some of the organs, and my diagnosis was it was the kidney." Dr.

Windham testified that his ultimate diagnosis was that Mask suffered an injury to his kidney, which developed into peritonitis that caused his death; that a man could injure the kidney by violently exerting himself lifting a heavy object; that he didn't think malaria would have produced peritonitis; that in his 36 years of practice he had never known of a person having malaria and malaria producing peritonitis and killing the man. Dr. Windham was asked on cross-examination whether the first time he saw Mr. Mask he formed a definite conclusion as to what was then causing his suffering. He testified:

"A. Yes. I felt sure that it was an injury to, as I said, to some internal organ, and I felt like it was a kidney, from the soreness he had and history of having passed the blood like he did; was bound to have been his kidney or he wouldn't have passed the amount of blood he did pass.

"Q. Did he have fever the first time you saw him? A. Yes.

"Q. That fever continued on through each time you saw him? A. Yes.

He was asked to state the nature of his examination the first time he saw Mask. He testified:

"A. Well, of course, I took his temperature and his pulse, and palpated his abdomen, and his back in the region of his kidneys, trying to locate where the injury was the best that I could tell from the way he was suffering, and he had an awful lot of soreness in the region of his kidney.

"Q. Then, from that examination the man could have been suffering from a number of other things, such as stated. a moment ago. He might have had an abscess of the prostate or stone in the kidneys? A. Well, from the history that he gave, lifting this pipe and hurting himself, and this coming on following that I don't see how it could have been possible. It looks like this other might have showed up some time.

He further testified:

"Q. Doctor, in your opinion as a physician who treated this deceased man from October 13th until he died, in your opinion did he die from hemorrhoids? A. No, sir.

"Q. In your opinion did he die from typhoid fever? A. No, sir.

"Q. In your opinion did he die from kidney stones? A. No, sir.

"Q. You reached a conclusion, as a medical man, satisfactory to you, in the light of all the circumstances surrounding his case, did you not? A. Yes, sir.

"Q. And your conclusion was that he died with peritonitis brought on by an injury to the kidney? A. That's correct.

"Q. When you injure or damage a kidney is that or not calculated to impair its function? A. Yes, sir.

"Q. And when the kidney function is impaired state whether or not it is usually followed by generalized neuritis? A. It is.

"Q. By neuritis you mean that every part of the body, every nerve of the body becomes sensitive to touch? A. Yes.

"Q. Was that condition existing with Mr. Mask? A. It was."

Dr. Denman testified that a man could injure a kidney by a violent strain. In answer to hypothetical questions he testified that, in his opinion, when Mask lifted the pipe he injured his kidney, which injury caused peritonitis. He testified that in his opinion malaria could not produce peritonitis; that the history of the case was consistent with an injury to the kidney; that in his opinion hemorrhoids would not produce such a condition and kill a man.

Discarding all adverse evidence and giving credit to all evidence favorable to plaintiffs and indulging every legitimate conclusion favorable to them, could a jury rightfully have found, as it did, that Mask sustained an injury to his kidney which was a producing cause of his death? If so, there was evidence to support the verdict. Barron v. Houston, E. & W. T. Ry. Co., Tex.Com.App., 249 S.W. 825, 826; McCarty v. Hogan, Tex.Civ.App., 121 S. W.2d 499, 502; 17 Tex.Jur. 911. After careful consideration of the entire statement of facts, we have concluded that the evidence raised issues of fact as to whether Mask suffered an injury to his kidney which was a producing cause of his death. While the facts of other cases may not be of considerable value in arriving at a conclusion on such questions, we are of the opinion that similar verdicts based on less testimony have been sustained. We call attention to the following authorities: Carter v. Travelers Ins. Co., 132 Tex. 288, 295, 120 S.W.2d 581; Roland v. Employers' Casualty Co., Tex.Civ.App., 290 S.W. 895, 899, affirmed Tex.Com.App., 1 S.W.2d 568; Texas Employers' Ins. Ass'n v. Davidson, Tex.Civ.App., 5 S.W.2d 1008, 1009; Zurich General Accident & Liability Ins. Co. v. Wood, Tex.Civ.App., 10 S.W.2d 760, 761; Federal Underwriters Exchange v. Polson, Tex.Civ.App., 148 S.W.2d 956, 960; Southern Underwriters v. Hoopes, Tex.Civ.App., 120 S.W.2d 924; Traders & General Ins. Co. v. Wright, Tex.Civ.App., 144 S.W.2d 626, writ refused.

We have given careful consideration to all of appellant's contentions. They are respectfully overruled. The judgment is affirmed.