**ASSOCIATED EMPLOYERS LLOYDS et al.**
**v. SELF.**

No. 13661.

Court of Civil Appeals of Texas. Dallas.

Jan. 25, 1946.

Rehearing Denied Feb. 22, 1946.

Touchstone, Wight, Gormley & Touchstone, of Dallas, and A. F. Nossaman, of Sherman, for appellants.

Caldwell, Baker & Jordan, of Dallas, for appellee.

BOND, Chief Justice.

Appealing from an adverse decision of the Texas Industrial Accident Board, appellee B. F. Self filed this suit in a district court of Grayson County against appellant Associated Employers Lloyds and its attorney in fact, J. M. Ferguson, as compensation carrier of Fant Milling Company, a corporation which owns and operates a mill in Sherman, Texas, for injuries alleged to have been received by him at said mill. Appellee, on January 24, 1944, in due course of his employment was engaged in pushing a two-wheel truck loaded with four 100-pound sacks of shorts (feed products) down an incline, or ramp; and, in an effort to lift and hold back the heavily laden truck, his feet suddenly slipped causing him to fall backward to the floor with great force and violence as to injure the lower portion of his back.

The cause was submitted to a jury, and, on findings that appellee sustained injuries on the occasion in question resulting in partial total incapacity to labor to the extent or degree of 65 per cent for 223 weeks, judgment was entered for the statutory complementary amount in favor of appellee. Then, on motion for new trial, the court heard evidence as to the misconduct of the jury, thus overruling the motion.

Appellant contended in the court below, and urges here, that the fall of appellee caused no compensable injury; and, if so, any injuries that he may have sus-

tained were temporary and partial, hence judgment should have been entered in its favor; and further, that the misconduct of the jury, in agreeing on legal results that would obtain to answers to issues submitted and then answering such questions in a way to carry out such agreement, justified a new trial; hence assigned error in the action of the trial court in overruling its motion. These contentions bring us to the task of a full review of the evidence, and of according to the judgment of the court below all testimony in its most favorable light from appellee's viewpoint, disregarding all evidence and inferences contrary thereto.

The injured employe, B. F. Self, testified to the effect that his injuries occurred when he lost his footing while going down an incline with a two-wheel truck loaded with 100-pound sacks of shorts; that when his foot slipped he fell, carrying the weight of the load with him, and struck the small of his back on the platform; that after the fall he felt dizzy, and when he started to get up he felt a pain in the small of his back causing him to be unable to straighten,—felt like it was broken or bruised, and that he was unable to continue his work because of feeling dizzy and having the pains in his back. Soon after the fall he went home and to bed, but could not rest or sleep because of severe pain and nervous condition. On the next morning he went to the mill, got permission to go to a doctor, and did go to Dr. Enloe in Sherman, Texas, who, after having him remove his clothes, diagnosed his troubles, gave him a "hypodermic shot with a needle in his back", and then directed him to return home and go to bed. That when the hypodermic injection died out, he bathed his back with alcohol, but continued to suffer pain and nervousness. On the second or third day after the injury, appellee went back to Dr. Enloe who put on him an electric pad, and thereafter went back to work, doing light jobs about the mill; worked a half day, when his back began hurting him so badly that he had to quit and go home. On the third or fourth day he went back to Dr. Enloe who taped up his back with adhesive-tape from his waist down, which seemed to brace his back some; and then the doctor told him to go home and lay off for three weeks. That he followed the instructions of Dr. Enloe, but continued to suffer pain in his back, could not reach down and pick up anything from the floor, and when he attempted to

bend "it seemed like somebody had rammed a knife in his back"; that the pains extended from his back down the outside part of his legs to his ankles. Appellee further testified that, excepting the three partial days he worked at the mill, he had not done any work from the date of injury to time of trial; that his condition had not improved, he could not sleep, suffered constantly from aches and pains in his back. Appellee gave further evidence that before he got hurt he could walk and stand erect, never had any pains or aches in his back before, and could lift heavy sacks of feed without hurt or pain. Appellee's wife, Mrs. Alta Self, testified that she had been married to appellee thirty-two years; that her husband had done farm work without ever complaining of his back; that he had not had a doctor in twelve or fifteen years, walked straight and erect; that he began work for Fant Milling Company in the fall of 1943 and continued uninterruptedly until he got hurt in January 1944; that on the day he got hurt, he was not complaining when he left home; that when she next saw him, he came home bent and stooped over, which caused him to go to bed, and on looking at his back she noticed "something like a knot kinder discolored like a bruise in the small of his back right below his belt line"; that he did not sleep much that night and has not rested good since his injury. Appellee's daughter, Mrs. J. D. Bivens, gave testimony corroborative of that of her father and mother; related the suffering of her father from pain and the knot she saw on his back—"pretty good size knot, about as big as the palm of my hand, right in the small of his back." James R. Hudson gave testimony for appellee that during the years 1933 to 1938 he had worked with him at Cummer-Graham Company in Paris, Texas, unloading freight cars, handling lumber, and stacking crates; that he had seen him lift things weighing 100 pounds, handle lumber from cars, and other species of freight; that before the injury he had never heard him complain of aches and pains in his back, but since his injury had noticed that he did not walk straight.

Evidently the above related testimony presents fact issues for determination by the jury as to appellee's injuries and the extent and duration of his disability. This evidence is uncontroverted, except as may be inferred from the long tedious examination and cross-examination of physi-

cians involving their knowledge and conclusions derived from X-ray pictures taken of appellee's back. Their testimony is to the effect that disclosures by X-rays reveal that appellee's pain in the small of his back could be the result of arthritis of long standing, and not from trauma. However, Dr. Ben L. Schoolfield testified for appellee, analytically describing the X-ray pictures; and, in summarizing his prognosis of appellee's condition, testified that the space between the last vertebra and the sacrum was much smaller than normal, that the nerve opening was smaller than it should be, and that a narrowing or closing of the opening causes a certain amount of pressure on nerve roots as they come out of the opening; that it does not take much narrowing of the openings to produce irritation of the nerves; thus, in his opinion, the X-ray pictures showed enough to account for the injury, as to cause the pain in appellee's back as well as pain in his lower extremities. He further testified that the X-ray picture made February 3, 1945, did not evidence any improvement of the lumbosacral joint, when compared to X-rays made in April 1944; that the X-ray made just a few days before the trial showed the same narrowing of the disc, rounding off of the fifth lumbar vertebra, lipping on the fourth lumbar vertebra, which apparently had increased over April 1944, narrowing the joint space and articulation of the vertebrae, thus bringing about pressure on the nerves. The doctor's conclusion as to appellee's condition and future suffering was that it could have been caused by the fall; landing on his back evidencing concussion. The conclusion of Dr. Schoolfield, based upon his past experiences in such cases, is that such a fall and blow as related by appellee would cause injury to the lumbar region, and he did not think such narrowing of the space occurs in an arthritic spine, unless the result of tuberculosis; that, as a result of arthritic calcification, there would not be such narrowing as would fill in the space and cause lipping of the fourth and fifth lumbar vertebrae. The doctor concluded with the opinion that the condition of appellee was not caused by arthritis, and no evidence of congenital trouble; thus attributing the condition of his spine wholly to the injury sustained in the fall. Other physicians testified, as to their interpretation of the X-rays, much the same as related by Dr. Schoolfield, concluding that the X-rays disclosed injury that could have been caused by the fall and blow to appellee's back; but that from a theoretical standpoint could have been altogether caused by chronic arthritis.

So we have the uncontroverted testimony of nonexpert witnesses of the occurrence of the accident, details of the injuries, the employee's suffering, pain and nervous debility, and the evidence of trauma to his back, as the result of the fall. That such condition was continuous from time of the injury to date of trial, causing him to be unable to work; and that the X-rays disclose deformity of his spine, as could have been the result of the fall. On the other hand, we have the opinion of experts, or skilled physicians, persuasive but not always conclusive, that the X-ray pictures of appellee's back, spinal column and connecting discs, evidence arthritis of long standing; and that the pains suffered by appellee could be attributed to an arthritic condition. Dr. Martin gave as his opinion, however, that the accident related by appellee could have caused the abnormal condition of his spine as revealed by the X-rays, but he would not say that it did so.

Appellant contends that appellee's injury was superficial; that the condition of his spinal column, his pains and suffering, resulted from other causes; that, at least, the evidence is equally probative that he was suffering from arthritis as from trauma, leaving the cause of his disability in doubt to warrant judgment in its favor. We think that under Texas authorities lay testimony, although controverted by expert medical testimony based upon hypothetical conclusions, may be sufficient to sustain controlling causation issues. American General Ins. Co. v. Smith, Tex.Civ.App., 163 S.W.2d 849; Gulf Casualty Co. v. Bostick, Tex.Civ.App., 116 S.W.2d 915, writ dismissed; Security Mutual Casualty Co. v. Bolton, Tex.Civ.App., 84 S.W.2d 552; Coxson v. Atlanta Life Ins. Co., 142 Tex. 544, 179 S.W.2d 943; United States Casualty Co. v. Vance, Tex.Civ.App., 91 S.W.2d 465; Carter v. Travelers Ins. Co., 132 Tex. 288, 120 S.W.2d 581. In many cases courts have held that facts similar as here related (and in many cases where not nearly so strong) were sufficient to sustain findings of the jury and support the judgment; holding, in effect, that such evidence left an open question for the trier of facts, and the jury having answered in favor of the

injured party, courts of appeal have no authority to disturb the judgment. We cite a few: Metropolitan Casualty Ins. Co. v. Woody, Tex.Civ.App., 80 S.W.2d 771, writ dismissed; Texas Indemnity Ins. Co. v. Godsey, Tex.Civ.App., 143 S.W.2d 639, writ refused; Traders & General Ins. Co. v. Wright, Tex.Civ.App., 144 S.W.2d 626, writ refused; Southern Underwriters v. Hoopes, Tex.Civ.App., 120 S.W.2d 924, writ dismissed; Gulf Casualty Co. v. Bostick, Tex.Civ.App., 116 S.W.2d 915, writ dismissed; United States Casualty Co. v. Vance, Tex.Civ.App., 91 S.W.2d 465, writ refused; American General Ins. Co. v. Smith, Tex.Civ.App., 163 S.W.2d 849, writ refused; Traders & General Ins. Co. v. Turner, Tex.Civ.App., 149 S.W.2d 593, writ dismissed judgment correct; Traders & General Ins. Co. v. Ray, Tex.Civ.App., 128 S.W.2d 80, writ dismissed judgment correct; Federal Underwriters Exchange v. Stricklin, Tex.Civ.App., 151 S.W.2d 612, writ dismissed judgment correct; Metropolitan Life Ins. Co. v. Funderburk, Tex. Civ.App., 81 S.W.2d 132, writ dismissed; Federal Underwriters Exchange v. Polson, Tex.Civ.App., 148 S.W.2d 956, writ dismissed judgment correct; Texas Employers Ins. Ass'n v. Davidson, Tex.Civ.App., 5 S.W.2d 1008; Roland v. Employers Casualty Co., Tex.Civ.App., 290 S.W. 895, affirmed, Tex.Com.App., 1 S.W.2d 568; Texas Employers Ins. Ass'n v. Mask, Tex.Civ. App., 180 S.W.2d 369; Maryland Casualty Co. v. Rogers, Tex.Civ.App., 86 S.W.2d 867; Republic Underwriters v. Howard, Tex.Civ.App., 69 S.W.2d 584, writ dismissed.

On the assignment to the action of the trial court in overruling appellant's motion for new trial for misconduct of the jury, we think the court's action is conclusive. The point in issue is that in answer to question submitted as to the number of weeks to be the duration of appellee's total incapacity to labor, the jury determined the time, 223 weeks, by first agreeing that appellee should have $3,000; and, his compensation rate being $13.50 per week, dividing the amount by the rate gave 222 plus. Thus they made it even weeks by answering the question, 223 weeks. Many of the jurors gave evidence on the issue, denying in toto any such agreement, and expressly stated that they arrived at the period of duration from the evidence, and not by calculation as to the award the injured employe

should receive. We think it unnecessary to relate in detail the evidence, it being sufficient to support the action of the trial court; and the court having determined the issue in favor of appellee, such is binding on this court.

Finding no reversible error, assignments are overruled, and the judgment of the court below affirmed.